# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA

## Wheeling Division

**DIANA MEY,**
**individually and on behalf of a proposed class,**

    Plaintiff,

v.                                             Civil Action No. 5:19-CV-237

**JOHN DOE DEFENDANT I,**
**JOHN DOE DEFENDANT II, and**
**JOHN DOE DEFENDANT III,**

    Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1.    Spoofed robocalls—calls generated by scam artists or scofflaw telemarketers who manipulate automatic telephone dialing systems (ATDS) to conceal their identities so they can bombard consumers' phones and dupe them into answering— are a scourge visited upon millions of Americans every day. The Federal Communications Commission's (FCC) chairman has described them as "real threats to American consumers."[1]

---

[1] *See FTC and FCC Host Joint Policy Forum and Consumer Expo to Fight the Scourge of Illegal Robocalls* (March 7, 2018) https://www.ftc.gov/news-events/press-releases/2018/03/ftc-fcc-host-joint-policy-forum-consumer-expo-fight-scourge.

2. Numbers that do not and cannot exist (here, "48542154234," an eleven-digit number that is not and cannot be assigned to any telephone subscriber, and "000-000-0000"), but nonetheless display on the recipient's caller ID, are obviously spoofed.[2]

3. There is no legitimate reason to transmit a call from an eleven-digit or a "000-000-0000" number, as no person or business could be assigned that number.[3]

4. Telephone carriers and telephone service providers know this, and can easily identify and block these calls.[4] They do not do so because these spoofed robocalls make them millions of dollars—not only because they are paid for enabling the calls to transmit through their systems, but also because they sell consumers call-blocking services that help block spoofed robocalls and fix the very problem the carriers and providers themselves have helped to create. These companies make money coming and going from spoofed robocalls.

5. Here's how the system works:

    a. A spoofer, John Doe Defendant I (or "Defendant Spoofer"), pays a provider, such as a VoIP ("voice over internet protocol") company, here John Doe Defendant II (or "Defendant Provider"), to place thousands of calls practically simultaneously to consumers and make

---

[2] Some spoofed robocalls may be more difficult to identify because the numbers are disguised on caller ID to appear to originate from a legitimate ten-digit telephone number.
[3] *See Advanced Methods to Target and Eliminate Unlawful Robocalls*, 32 F.C.C. Rcd. 9706, 9713 ¶ 20 (Nov. 17, 2017).
[4] *Id.* at 9709 ¶ 9.

2

       it appear to the call recipient that the call is coming from an obviously spoofed source.

b.   Defendant Provider allows Defendant Spoofer to set the displayed number to an eleven-digit or "000-000-0000" number, which Defendant Provider knows is invalid and illegitimate, and no telephone subscriber could lawfully originate calls from such a number.

c.   Defendant Spoofer uses Defendant Provider's service to make hundreds of thousands or even millions of calls to consumers each day. In return, Defendant Spoofer pays Defendant Provider for the use of its platform for those unlawful purposes.

d.   Defendant Provider pays a telephone carrier, here John Doe Defendant III (or "Defendant Carrier") to connect the calls to the recipient.

e.   Defendant Carrier also knows the eleven-digit and "000-000-0000" calls being placed through their system are illegitimate and invalid, and that no subscriber could lawfully originate calls from that number. Defendant Carrier *could easily* block the robocalls from being connected, 47 C.F.R. § 64.1200(k)(2)(i), but it elects not to because it profits from its financial arrangement with Defendant Provider, and placing the calls ensures that there is a market for the robocall blocking services that it sells to its customers.

6. Each Defendant knowingly and willfully plays its role and completes the critical steps necessary to make these calls.

7. Each performs an essential and inextricable role in placing and connecting these unlawful calls to consumers.

8. Defendant Spoofer loads the fake caller ID into the system and takes the initial step to place the calls. Defendant Provider and Defendant Carrier complete the circuit. They *know* when these unlawful spoofed robocalls are being placed through their systems, which effectively "light up" when the spoofer generates enormous numbers of calls, all displaying an obviously false caller ID number. Defendant Provider and Defendant Carrier could make simple programming changes to stop these obviously spoofed robocalls from being transmitted. Nonetheless Defendant Provider and Defendant Carrier willingly and knowingly transmit these calls with their obviously invalid and unlawful caller ID numbers and connect the calls with consumers already hounded by scores of other nuisance robocalls.

9. By their conduct, Defendants Provider and Carrier:

   a. Provided the avenue and means for Defendant Spoofer to generate scores of robocalls from an obviously spoofed number;

   b. Willfully enabled fraudulent spoofing and knowingly offered their services and allowed them to be used for unlawful purposes by transmitting the calls to Ms. Mey and class members;

   c. Took steps necessary to physically place obviously spoofed robocalls to Ms. Mey and class members;

    d. Made the conscious decision to allow the obviously spoofed robocalls to transmit to Ms. Mey and class members;

    e. Were active participants in placing, and took steps necessary to place, obviously spoofed robocalls to Ms. Mey and class members;

    f. Controlled the sending of the spoofed robocalls, and could have easily stopped them; and

    g. Were so involved in the placing of obviously spoofed robocalls to Ms. Mey and consumers as to be directly liable for initiating those calls.

10. This is an action to determine the identity of these John Doe Defendants, and hold them accountable for making these robocalls, which constitute serial violations of federal law prohibiting autodialed telephone calls placed to cellular and residential lines without consent.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).

12. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this action alleges violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq*.

13. The John Doe Defendants are subject to this Court's personal jurisdiction because the calls the Defendants made were made to Ms. Mey, a resident of West Virginia, in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)–(d) because the Defendants are deemed to reside in any judicial district in which they are subject to

personal jurisdiction when the action is commenced, and the Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. Venue is also proper because the acts giving rise to this action occurred in and were directed to Ms. Mey in this District.

## PARTIES

15. Diana Mey is a resident of Wheeling, West Virginia.

16. John Doe Defendant I, or Defendant Spoofer, is the person or entity that orchestrated the scheme to transmit spoofed robocalls to Ms. Mey and class members.

17. John Doe Defendant II, or Defendant Provider, provided the telephone services that John Doe Defendant I used to place spoofed robocalls to Ms. Mey and class members.

18. John Doe Defendant III, or Defendant Carrier, is the telephone carrier that leased the telephone lines to John Doe Defendant II used to place the obviously spoofed robocalls to Ms. Mey and class members.

## FACTS REGARDING THE CALLS TO MS. MEY

19. Ms. Mey received the following calls from "48542154234" on her personal cellular telephone line, XXX-XXX-7346:

| Number displayed on Caller ID | Date and time of call | Description of call |
|---|---|---|
| 48542154234 | 12/14/2018 3:43 p.m. | Caller with heavy accent, perhaps Indian, reaches Ms. Mey's answering machine and says he is calling from Medicare. Ms. Mey hears others with similar accents in the background also saying they are calling from Medicare. The caller hangs up when he realizes he has reached an answering machine. |

6

| 48542154234 | 12/15/2018 1:42 p.m. | Ms. Mey answers the call, hears a pause, and then a man with a heavy accent comes on the line. The man says his name was "Michael," and that he was calling from Medicare. Michael asked Ms. Mey if she had received a letter from Medicare in the last few days. Ms. Mey said she had not. Michael apologized and said he would like to inform Ms. Mey that Medicare was going to "de-active the red, white and blue card." Ms. Mey hung up on the call. |
| --- | --- | --- |
| 48542154234 | 12/25/2018 12:11 p.m. | Ms. Mey answers this call on Christmas day, hears a momentary pause, and then hears call center background noise. She says hello several times, and the caller disconnects without saying anything. |
| 48542154234 | 1/4/2019 4:43 p.m. | A similarly-accented man reaches Ms. Mey's answering machine and says he is from Medicare. He hangs up once he realizes he has reached an answering machine. |
| 48542154234 | 1/24/2019 3:51 p.m. | Ms. Mey answers, hears a pause, then call-center noise, and a heavily-accented man says he is calling from Medicare. Ms. Mey hangs up. |
| 48542154234 | 1/28/2019 1:15 p.m. | Ms. Mey answers, hears a pause, then call-center noise, and the caller disconnects the call. |
| 48542154234 | 2/5/2019 11:28 a.m. | Caller with heavy accent reaches Ms. Mey's answering machine, and call-center noise can be heard in the background. He says he is from Medicare and disconnects when he realizes he has reached an answering machine. |
| 48542154234 | 3/6/2019 1:32 p.m. | Caller reaches Ms. Mey's answering machine, and call-center noise can be heard in the background. The caller disconnects the call. |

20. Ms. Mey received the following calls on this same cellular telephone line from numbers displaying "000-000-0000" on her caller ID:

| Number displayed on Caller ID | Date and time of call | Description of call |
| --- | --- | --- |
| 000-000-0000 | 05/05/2017 12:51 p.m. | Caller with a heavy accent, perhaps Indian, reaches Ms. Mey's answering machine and asks for Julian. He says his name is Michael and it sounds like he says he is calling from Microsoft technical support. He hangs up when he realizes he has reached an answering machine. |
| 000-000-0000 | 05/30/2017 12:47 p.m. | Ms. Mey answers there is a pause. Ms. Mey says hello again and a perhaps Indian-accented male asks if he is talking to Julian, Ms. Mey's mother who had been deceased for 3 years. The caller says he is Adam and says he is |

7

| | | |
|---|---|---|
| | | calling from Windows technical department. At that point, Ms. Mey recognized the scam and hung up. |
| 000-000-0000 | 01/02/2018 10:15 a.m. | Ms. Mey answers and hears a pause before this prerecorded message plays: "Hi this is Heather calling from the cardholder services department. Are you struggling with credit card debt? Then you need to be aware that the new laws going into effect in October favor the credit card companies and make it much tougher on consumers and the big banks have just doubled your minimum payment requirements. But there is something you can do about it. The good news is that you're now eligible to lower your interest rates on all your major credit cards which will save you thousands of dollars a year. To qualify you need at least two thousand five hundred dollars in debt and have at least one account in good standing. But you must act now before your eligibility expires. Please consider this your final notice. Press one to lower your interest rates. To lower your interest rates press one now."<br><br>Ms. Mey pressed one to try to identify the caller, and then heard another prerecorded message asking her to stay on the line for a polltaker to ask a few more questions. A perhaps Indian-accented male answered, said thanks for responding, and asked how Ms. Mey is doing. Ms. Mey hung up. |
| 000-000-0000 | 01/09/2018 1:42 p.m. | Caller reaches Ms. Mey's answering machine and the same prerecorded message as the one on January 2, 2018 played. |
| 000-000-0000 | 01/11/2018 1:30 p.m. | Caller reaches Ms. Mey's answering machine and the same prerecorded message as the one on January 2 and 9, 2018 played. |
| 000-000-0000 | 01/29/2018 10:17 a.m. | Male caller reaches Ms. Mey's answering machine and says he is calling from Medicare. He hangs up once he realizes he has reached an answering machine. |
| 000-000-0000 | 02/08/2018 10:19 a.m. | Ms. Mey answers the phone and there is a pause and a click, then a perhaps Indian-accented male says he is calling from pain management center. He says he is calling regarding Ms. Mey's medical brace and pain cream. He asks if Ms. Mey has Medicare and wants to know if she has any back or shoulder pain and he can provide her with braces and pain cream. He asks for the name of Ms. Mey's prescription drug plan. To determine the identity of the caller, Ms. Mey feigns interest. She asks for the name of his company, and he replies, "Pain Management Center." Ms. Mey asks where the company is located, and he replies, "In your state." Ms. Mey asks for an address, and he says he is not allowed to give out that information. Ms. Mey can hear |

8

| | | |
|---|---|---|
| | | call center chatter in the background. She tells him not to call her again, and hangs up. |
| 000-000-0000 | 02/13/2018 4:44 p.m. | Ms. Mey answers and hears a pause and a click, and then a perhaps Indian-accented male says he is calling from the pain management center regarding topical pain cream. Ms. Mey tells him to stop calling, and hangs up. |
| 000-000-0000 | 04/14/2018 6:41 p.m. | Perhaps Indian-accented male caller reaches Ms. Mey's answering machine and says he is with Global Technology Solutions. He hangs up when he realizes he has reached her answering machine, but he immediately calls back before the recorder has a chance to reset. |
| 000-000-0000 | 04/14/2018 6:42 p.m. | Caller reaches Ms. Mey's answering machine and breathes heavy once, then disconnects the call. |
| 000-000-0000 | 05/03/2018 12:21 p.m. | Perhaps Indian-accented male caller reaches Ms. Mey's answering machine and disconnects. |
| 000-000-0000 | 05/03/2018 2:38 p.m. | Ms. Mey answers and there is a pause. Ms. Mey says hello again, and an Indian-accented male says this is a short confirmation call to Ms. Mey, and he asks if she has received her free pain cream and free massages from Medicare. Ms. Mey tells him no, and he replied that Medicare is providing her with free pain cream and pain massages as a complimentary gift, she doesn't have to pay a single penny, and it will be directly delivered to her doorstep through UPS Mail at no cost to her. He asks if she has Medicare insurance and she tells him no, that she has Blue Cross. He asks again if she has the red, white and blue card and when she says no, she disconnects the call. |
| 000-000-0000 | 05/31/2018 1:00 p.m. | Ms. Mey's answering machine records a familiar cardholder services-type prerecorded message call: "Sarah from Customer Services in reference to your current credit card account . . . it is urgent that you contact us immediately concerning your eligibility for lowering your interest rate." |
| 000-000-0000 | 09/19/2018 10:33 a.m. | Ms. Mey answers, hears a pause, and then a familiar cardholder services-type prerecorded message. Ms. Mey hangs up. |
| 000-000-0000 | 03/15/2019 6:38 p.m. | Female caller reaches Ms. Mey's answering machine and says she is calling to speak to Diana Mey but hangs up when she realizes she has reached a machine. |

21. Each call was obviously spoofed because it displayed an eleven-digit number, or a "000-000-0000" number on the caller ID.

9

22.     Each call was placed in violation of the Truth in Caller ID Act of 2009, which makes it "unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 42 U.S.C. §227(e)(1).

23.     Each call was placed using an ATDS because each was one of thousands of calls placed by Defendant Spoofer almost instantaneously. Mass placement of calls in this manner is only possible through an ATDS.

## FACTS REGARDING THE IDENTITY OF THE DEFENDANTS

24.     Because the calls Ms. Mey received were obviously spoofed, she does not know the identity of the John Doe Defendants. These Defendants are identifiable by subpoenas—first to Ms. Mey's carrier to identify John Doe Defendant III; then to John Doe Defendant III to identify the provider, John Doe Defendant II; and then to John Doe Defendant II to identify the spoofer, John Doe Defendant I.

25.     The John Doe designation of each Defendant is a temporary place holder until the true identity of the parties is ascertained through discovery.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure and propose the following class definition, subject to amendment as appropriate:

> All persons to whom calls were made (1) by John Doe Defendants I, II, and III, (2) displaying caller ID "48542154234" or "000-000-0000," (3) to the

10

person's cellular telephone line, (4) at any time from four years before the filing of this action through the date of class certification.

29. Excluded from the Class are Defendants; any entities in which they have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

30. The class members are identifiable through telephone records and telephone number databases used to transmit calls to class members.

31. Numerosity is satisfied. There are hundreds of thousands of class members. Individual joinder of these persons is impracticable.

32. There are questions of law and fact common to Plaintiff and to the proposed class.

33. Plaintiff's claims are typical of the claims of class members.

34. Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members, she will fairly and adequately protect the interests of the class members, and she is represented by counsel skilled and experienced in class actions.

35. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

36. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## LEGAL CLAIM

### Violation of § 227(b)(1) for calls made using an ATDS

37. Section 227(b) of Title 47 of the United States Code regulates so-called "robocalls"—calls made using an ATDS or an artificial or prerecorded voice.

38. The statute prohibits calls made to cellular telephones using an ATDS, with an exception for certain emergency calls or calls placed with the prior express consent of the called party. *Id.* § 227(b)(1)(A).

39. In other words, with respect to nonconsensual, nonemergency calls to cellular telephone lines, ATDS calls are prohibited.

40. The TCPA requires prior "express consent" from the called party with respect to calls placed to cellular telephone lines. Prior express consent is consent that is clearly and unmistakably conveyed by the call recipient to the party placing the call; implied consent is not sufficient.

41. Persons who receive calls in violation of these provisions may bring an action to recover the greater of the monetary loss caused by the violation, or $500. *Id.* § 227(b)(3). If the Court finds the Defendants willfully or knowingly violated § 227(b), the Court may increase the award to up to $1500 per violation. *Id.*

42. Each Defendant violated 47 U.S.C. § 227(b)(1)(A) by making calls, either directly or through the actions of others, using an ATDS to cellular telephone numbers without the prior express consent of the called party.

## RELIEF SOUGHT

Plaintiff requests the following relief:

1. That the Court certify the class proposed above under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

2. For each violation of the TCPA, $500 awarded to Plaintiff and each class member;

3. For each willful or knowing violation of the TCPA, $1500 awarded to Plaintiff and each class member;

4. That the Defendants, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records which could be used to identify the members of the classes; and

5. That Plaintiff and all class members be granted such other and further relief as is just and equitable under the circumstances.

**Jury trial demanded.**

Dated: September 25, 2019          Respectfully submitted,

          /s/ John W. Barrett_____
John W. Barrett (WV Bar No. 7289)
Jonathan R. Marshall (WV Bar No. 10580)
Benjamin J. Hogan (WV Bar No. 12997)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: 304.345.6555
Facsimile:  304.342.1110
JBarrett@baileyglasser.com
JMarshall@baileyglasser.com
BHogan@baileyglasser.com

William "Billy" Peerce Howard
(pending *pro hac vice* admission)
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone:  813-500-1500
Billy@TheConsumerProtectionFirm.com

Yvette Golan (pending *pro hac vice* admission)
The Golan Firm
2000 M Street, NW
Suite 750a
Washington, DC 20036
Telephone: 866-298-4150
YGolan@tgfirm.com