## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| DIANA MEY,<br>    Individually and on<br>    behalf of a proposed class,<br><br>        Plaintiff,<br><br>v.<br><br>ALL ACCESS TELECOM, INC.,<br>BANDWIDTH INC.,<br>CENTURYLINK, INC.,<br>d/b/a Lumen Technologies,<br>NOS COMMUNICATIONS, INC., and<br>TELIAX, INC.,<br><br>        Defendants. | Case No.: 5:19-CV-00237-JPB |

### MEMORANDUM IN SUPPORT OF THE LUMEN DEFENDANTS' RULE 12(B)(2) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

CenturyLink Communications, LLC[1] and Level 3 Communications, LLC[2] have asked this Court to dismiss the claims against them for three reasons: (1) this Court lacks personal jurisdiction over them, (2) plaintiff's Second Amended Complaint fails to state a claim against them for which

---

[1] CenturyLink Communications, LLC ("CLC") is a Delaware LLC whose sole member is Lumen Technologies, Inc, (formerly CenturyLink, Inc.) a Louisiana corporation with its principal place of business in Louisiana. *See* Declaration of Phillip A. Linse ¶ 1.

[2] Level 3 Communications, LLC ("Level 3") is a Delaware LLC whose sole member is Level 3 Financing, Inc, a Delaware corporation with its principal place of business in Colorado. *See* Linse Decl. ¶ 1.

Both CenturyLink Communications, LLC and Level 3 Communications, LLC are being substituted for the originally-named defendant, CenturyLink, Inc., pursuant to the parties' Joint Motion and Stipulation to that effect.

relief can be granted, and (3) this Court lacks subject matter jurisdiction because § 227(b)(1)(A) of the TCPA was unconstitutional during the time the complained-of calls were made.[3]

CenturyLink Communications, LLC ("CLC") and Level 3 Communications, LLC ("Level 3") (collectively "the Lumen Defendants") do not have sufficient contacts with the Northern District of West Virginia (or West Virginia generally) to warrant this Court's exertion of either general or specific personal jurisdiction over them. Neither of the Lumen Defendants are incorporated in West Virginia, nor maintain their principal place of business in West Virginia.

*General Jurisdiction*: While each of the Lumen Defendants derive some, limited revenue in West Virginia, their business activities are a tiny fraction (less than 0.3%) of their nationwide revenues and are insufficient to render the Lumen Defendants "at home" in West Virginia. As a result, this Court does not have general personal jurisdiction over the Lumen Defendants.

*Specific Jurisdiction*: The Second Amended Complaint does not provide a basis for this Court to exercise specific jurisdiction over the Lumen Defendants. Plaintiff does not allege that the Lumen Defendants are her residential or wireless telephone carrier. Plaintiff does not allege that the Lumen Defendants transmitted calls directly to her phone in West Virginia. Nor does Plaintiff even allege that the Lumen Defendants transmitted the calls to her wireless carrier. Plaintiff asserts only that six (6) of the calls she received were transported *in part* by the Lumen Defendants[4] – but does not allege where this partial transportation began, nor where it terminated.

---

[3] CLC and Level 3 join in the joint motion to dismiss filed with defendants Bandwidth Inc. and Inteliquent, Inc., filed contemporaneously herewith. CLC and Level 3 submit this memorandum separately in support of their motion to dismiss for lack of personal jurisdiction.

[4] The Lumen Defendants' call records (excerpts of which have been provided to Plaintiff's counsel) suggest that CLC and Level 3 likely had a part in the transmission of four (4) of the six (6) calls. The call records do not reflect the call dated January 1, 2010, because the records do not go back that far. The records do not reflect that call identified as having occurred on January 1, 2019. *See* Linse Decl. ¶ 4.

2

In contrast to Plaintiff's scant jurisdictional allegations, the Lumen Defendants' call record data establishes that they did not receive or transmit any of the relevant calls in or to West Virginia, and did not even hand off the calls to Plaintiff's wireless provider. *See* Linse Decl. ¶ 5(b). To the contrary, the calls entered the network of the Lumen Defendants in Washington State, and left the network of Level 3 when the calls transited to the network of another intermediate carrier– AT&T, Corp.– at one of three terminating switches located in New York, Chicago, or Dallas. *See* Linse Decl. ¶ 5(c). After the calls entered the AT&T, Corp. network in one of those locations, the Lumen Defendants had no further involvement, no control over where the AT&T intermediate carrier sent the call next, and no control over how, or if, the call was subsequently terminated. *See* Linse Decl. ¶ 5(d). On these facts, Plaintiff's claims cannot be said to arise out of the Lumen Defendants' business in West Virginia – and this Court does not have specific jurisdiction over either CLC or Level 3.

## PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND

### I.  Procedural History and Plaintiff's Allegations

Plaintiff first filed this action in August 2019, alleging TCPA claims against a number of John Doe defendants (Doc. 1). Plaintiff amended her Complaint in October 2019 to include additional factual information. (Doc. 9). Plaintiff obtained leave to serve a number of subpoenas, two of which were directed towards Lumen. In about April, 2020, Lumen produced excerpts from call detail records, disclosing seven (7) calls that originated at 485-421-5423-4 and terminated at 304-424-7346, which Plaintiff has identified as her phone number.[5]

---

[5]  The Lumen Defendants' records and other evidence show this is a wireless telephone number, issued to Ms. Mey by her wireless provider, AT&T Wireless. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 286 (4th Cir. 2020) (discussing Ms. Mey's contract with her wireless provider, AT&T). The Lumen Defendants' call detail record data shows that Level 3 passed these calls on to AT&T Corp. *See* Linse Decl. ¶ 3.

3

Plaintiff filed her Second Amended Complaint against the Carrier Defendants in November 2020. (Doc. 42).  Plaintiff alleges that six of these calls originated with an "unidentified spoofer" which used an "invalid" 11-digit originating number.  Plaintiff further alleges that:

- An (unidentified) entity transmitted the six (6) calls to a carrier called All Access Telecommunications ("All Access");
- All Access transmitted four (4) of the calls directly to the Lumen Defendants;
- All Access transmitted two (2) of the calls to another carrier, Bandwidth, Inc., which, in turn transmitted the calls to the Lumen Defendants; and
- The calls were ultimately received by Diana Mey, when she was in West Virginia.

Plaintiff does not, however, allege that either of the Lumen Defendants actually delivered the calls to West Virginia, nor does she allege that either of the Lumen Defendants transferred the calls directly to Plaintiff's wireless provider. The facts are that they did not do either thing.

## II.    Facts Concerning the Lumen Defendants

CLC and Level 3 are telecommunications common carriers registered with the Federal Communications Commission.  As such, their obligation is to carry traffic (calls and data) on their networks. CLC and Level 3 are, in the context of this action, intermediate carriers, meaning they received the calls at issue from one carrier (All Access and/or Bandwidth), and transmitted those calls to another carrier.  *See* Linse Decl. ¶ 3.  Here, CLC received the calls from All Access or Bandwidth, handed off those calls to Level 3, which in turn handed off those calls to another intermediate carrier—AT&T, Corp.  *See* Linse Decl. ¶ 3.

While CLC and Level 3 have some facilities and business (mostly wholesale or fiber-optic backbone) in West Virginia, none of that business provides residential landline or wireless service.

No CLC or Level 3 entity shows having Ms. Dana Mey as a customer—residential or otherwise. *See* Linse Decl. ¶ 7.

Further, the amount of CLC's and Level 3's business in West Virginia constitutes a very small percentage of their overall revenue. In 2019, CLC's revenues in West Virginia were $13,300,390, which is about 0.27% of CLC's nationwide revenues of $5,002,181,734.00. Level 3's revenues in West Virginia in 2019 were $7,238,933, or about 0.154% of its approximately $4.7 billion revenues nationwide. *See* Linse Decl. ¶ 8.

Again, neither CLC nor Level 3 received or transmitted these calls in West Virginia. On this record, there is no basis for this Court to extend personal jurisdiction over the Lumen Defendants. In fact, we know of no case in which a telecommunications carrier was haled into court on analogous facts.

## **LEGAL STANDARD**

When a court's personal jurisdiction is challenged by a Rule 12(b)(2) motion, the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctr., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003). On a Rule 12(b)(2) motion, the court may consider the contents of the complaint and "affidavits submitted by both parties." *See Blakenship v. Napolitano*, 451 F. Supp. 3d 596, 611 (S.D. W. Va. 2020); *see also Intercarrier Commc'ns LLC v. WhatsApp Inc.*, 2013 WL 5230631, at *1 (E.D. Va. Sept. 13, 2013) (considering defendants' affidavits on a Rule 12(b)(2) motion to dismiss).

When evaluating personal jurisdiction over an out-of-state defendant, courts traditionally determine if the state's long-arm statute permits the assertion of jurisdiction, and then determine

whether exercising personal jurisdiction over the defendant comports with federal due process.[6] Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary to go through the normal two-step formula for determining the existences of personal jurisdiction. *See In re Celotex Corp.*, 124 F. 3d 619, 627-28 (4th Cir. 1997). Instead, the "statutory inquiry merges with the Constitutional injury," and this Court need only determine whether exercising personal jurisdiction is consistent with the due process clause. *Id.* at 628.

The exercise of personal jurisdiction over a non-resident defendant is proper only so long as 'minimum contacts' exist between the defendant and the forum state, "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

If the defendant's specific contacts with the forum state provide the basis for the suit, those contacts may establish "specific jurisdiction." *Carefirst,* 334 F.3d at 397. To determine whether specific jurisdiction exists, this Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.*; *see also John James, Inc. v. Hamburger North America, LLC,* 2013 WL 3990793, at *2 (N.D. W.Va., Aug. 2, 2013); *ALS Scan, Inc. v. Digital Consultants, Inc.,* 293 F.3d 707, 711-12 (4th Cir. 2002).

If the defendant's specific contacts with the plaintiff and the state are not the basis for the suit, however, then jurisdiction "must arise from the defendant's general, more persistent, but

---

[6] Under a long-arm statute, like West Virginia Code § 56-3-33, a state may enable its courts to exercise personal jurisdiction over non-residents that commit certain acts within the state, or certain acts outside of the state, that have caused injury within the state. *See Lozinski v. Lozinski*, 408 S.E. 2d 310, 315 (W. Va. 1991).

6

unrelated contacts with the state." *Carefirst*, 334 F.3d at 397.  "General jurisdiction calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG v. Bauman*, 571 U.S. 117, 140, n.19 (2014).  Thus, in-state business in and of itself "does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity." *Javage v. Gen. Motors, LLC*, 2017 WL 6403036, at *1 (N.D. W. Va. Aug. 18, 2017), *aff'd* at 36 F. App'x 418 (4th Cir. 2018).  Rather, general jurisdiction over a corporation requires "continuous corporate operations within a state…so substantial and of such a nature as to justify a suit…on causes of action arising from dealings entirely distinct from those activities." *Daimler,* 571 U.S. at 138 (quoting *Int'l Shoe*, 326 U.S. at 318).

## ARGUMENT

### I. This Court Lacks General Personal Jurisdiction Over the Lumen Defendants

There are no allegations in the Second Amended Complaint, nor any facts, that could support this Court exercising general jurisdiction over the Lumen Defendants.

First, Plaintiff arguably does not even attempt to plead general jurisdiction.  *See* Compl. ¶¶ 20, 21, 23, 42, 43, & 45-57.  Because the standard for imposing general jurisdiction is high, courts "quickly dispose" of conclusory allegations that general jurisdiction exists. *Intercarrier Commc'ns LLC v. WhatsApp Inc.*, 2013 WL 5230631, at *3 (E.D. Va. Sept. 13, 2013).  Plaintiff likely does not make such allegations, because the facts are not there. The Lumen Defendants have minimal presences in West Virginia.

The Lumen Defendants are LLCs organized under the laws of Delaware, with headquarters in Colorado (Level 3) and Louisiana (CLC) – not West Virginia.  Neither CLC nor Level 3 have any executives located in the state.  While each does get some, limited business in the state, CLC and Level 3 only derive 0.27% and 0.154% of their total revenue, respectively, from West Virginia.

7

*See* Linse Decl. ¶ 8. Such minimal presences fall far short of what would be needed to create general jurisdiction. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (holding no personal jurisdiction even though defendant ran 2,000 miles of track and had over 2,000 workers in the state). Thus, the undisputed facts show that Lumen Defendants have very few connections with West Virginia, and nothing approaching the continuous and systematic contacts that would satisfy the high standard of imposing general jurisdiction.

## II.  This Court Lacks Specific Jurisdiction Over the Lumen Defendants

This Court lacks specific jurisdiction over the Lumen Defendants because the Lumen Defendants have not purposefully targeted West Virginia for their business, and because plaintiff's TCPA claims do not arise out of the Lumen Defendants' minimal presence in West Virginia.

First, the Lumen Defendants provide communications services in more than 40 states. Plaintiff has not alleged that they specifically targeted West Virginia any more than the others, and the facts show that they have not. That is not enough.

By way of example, the Eastern District of Virginia declined to impose specific jurisdiction over the messaging service WhatsApp. There, the WhatsApp Messenger was used by approximately 200 to 300 million customers and ranked in the top five of the world's best-selling apps. Further, the parties agreed "that some users of WhatsApp's product use it in Virginia, and undoubtedly ordered the product while in Virginia." *WhatsApp*, 2013 WL 5230631, at *4.

The court found that those allegations were not enough to support the exercise of specific jurisdiction. It held that under such a theory, "every district in the United States [would have] jurisdiction over WhatsApp, because it has consciously chosen to conduct business in every single forum in which a user sends a message with the WhatsApp Messenger." *WhatsApp*, 2013 WL 5230631, at *4. "This Court does not agree with [plaintiff's] argument that a company 'consciously' or 'deliberately' targets a forum if a user unilaterally downloads or uses its software

8

within the forum, nor does [plaintiff] cite any authority supporting its broad interpretation of specific jurisdiction." *Id.*

Similarly, the Court in *Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599 (E.D. Va. 2016) dismissed a case for lack of personal jurisdiction on related facts. In that case, defendant offered a photo-filtering app available for download on the Apple App Store and the Google Play Store. *See Prisma*, 226 F. Supp. 3d at 605. The app was downloaded about 70 million times, with no indication that the defendant specifically targeted users in Virginia. *See id.*

In considering specific jurisdiction, the court cited the three-part inquiry noted above—including "purposeful availment." "[T]o satisfy this standard, 'a defendant outside the forum State must have at least 'aimed' its challenged conduct at the forum State.'" *Prisma*, 226 F. Supp. 3d at 607. "As the Fourth Circuit has put it, this approach is necessary to 'ensure that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Id.* at 607-08.

"Importantly, 'under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.' In the Fourth Circuit's view, 'such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.'" *Prisma*, 226 F. Supp. 3d at 608. The *Prisma* court dismissed the case and concluded that "the record here reflects no more than that defendant might expect its 'Prisma' app would eventually be downloaded in the United States, including Virginia. There is nothing in the record plausibly to suggest that defendant structured its relationship with its third-party distributors to require—or even facilitate—app downloads

9

specifically in Virginia." *Id.* at 611. "Put simply, defendant has merely used nationwide app stores to place defendant's product in the stream of commerce, without targeting or directing its activity toward Virginia in particular." *Id.* Therefore, the court held that "given the Fourth Circuit precedent and the logic elucidated in apposite cases, there is no personal jurisdiction over defendant." *Id.*

Here, the Lumen Defendants' affiliation with West Virginia is no more "targeted" at West Virginia than were the activities at issue in *WhatsApp* and *Pisma*. If anything, the Lumen Defendants' actions were more removed as they simply operated as a middleman passing data between third-parties in milliseconds, with everything they are alleged to have done occurring outside of West Virginia.

Second, Plaintiff's claims do not arise out of the Lumen Defendants' minimal business activities in West Virginia. Plaintiff complains that she received robocalls on her wireless telephone, and that the Lumen Defendants had a part in transmitting some (six) of those calls. But the Lumen Defendants do not provide Plaintiff with her wireless (or residential home phone) service, and she does not allege that the Lumen Defendants delivered those calls to her in West Virginia. In fact, the call detail record data shows that the Lumen Defendants received those calls at its facility in Washington State, and did not deliver those calls to Plaintiff in West Virginia – the calls left the network of Level 3 when the calls transited to the network AT&T, Corp. After the calls entered the AT&T, Corp. network, the Lumen Defendants had no further involvement and no control over where the AT&T, Corp. carrier sent the calls next, and no control over how, or if, the call was subsequently terminated. *See* Linse Decl. ¶ 5(d).

Last, Plaintiff may cite *Mey v. Castle Law Group, PC*, 2020 WL 3440566 (N.D. W. Va. June 23, 2020) because it concerns a recent TCPA class action brought before this Court by the

same plaintiff and the same attorneys. But, *Mey* is readily distinguishable. In *Mey,* this Court denied six motions to dismiss. As part of that briefing, "several of the defendants raise[d] arguments that claims made by the plaintiff must fail because they do not name each specific defendant in all of the allegations." *Mey*, 2020 WL 3440566, at *4. The court observed that the complaint asserts allegations against individuals and a set of entities that were either sham corporations or alter egos of one another that together made calls into West Virginia. *See id.*

This court then relied on the law of the case doctrine to hold that an earlier order found that one of the individual defendants made 25 calls into West Virginia, and that such actions supported the exercise of specific personal jurisdiction; and that such reasoning applies to the other defendants. *See Mey,* 2020 WL 3440566, at *4. In doing so, the court saw no reason to determine whether the corporate veil should be pierced to investigate the alleged sham and alter ego entity allegations at the motion to dismiss stage. *See id.*

This case is very different. Plaintiff has not pleaded facts that would support the proposition that the Lumen Defendants made or even delivered *any* of the allegedly unlawful calls into West Virginia. There is no allegation that the Lumen Defendants are sham corporations or alter ego entities of defendants—nor could they. Stated another way, the Lumen Defendants did not make a call to West Virginia, nor did they direct any action towards West Virginia. For the reasons stated above, this court should not exercise specific or general personal jurisdiction over them.

Again, the Lumen Defendants have found no case supporting the exercise of personal jurisdiction to a defendant like the Lumen Defendants: an intermediate carrier that did no more than pick up and hand off calls, neither of which activity occurred in the forum state.

## **CONCLUSION**

For the reasons stated, the Court should grant the Lumen Defendants' motion and dismiss Plaintiff's second amended complaint with prejudice.


Dated: February 3, 2021                             */s/* William J. Ihlenfeld, II

                                                     William J. Ihlenfeld, II (WVSB #7465)
Bowles Rice LLP
P.O. Box 390
Wheeling, WV 26003
Phone: (304) 230-1800
Fax: (304) 230-1819
wihlenfeld@bowlesrice.com

Russell S. Jones, Jr. (*pro hac vice pending*)
Robert V. Spake, Jr. (*pro hac vice pending*)
Elizabeth Marden (*pro hac vice pending*)
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
rjones@polsinelli.com
rspake@polsinelli.com
lmarden@polsinelli.com

*Attorneys for Defendants CenturyLink Communications, LLC and Level 3 Communications, LLC*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| DIANA MEY,           )<br>    Individually and on           )<br>    behalf of a proposed class,           )<br>           )<br>    Plaintiff,           )<br>           )<br>    v.           )<br>           )<br>ALL ACCESS TELECOM, INC.,           )<br>BANDWIDTH INC.,           )<br>CENTURYLINK COMMUNICATIONS.,           )<br>LLC, d/b/a Lumen Technologies,           )<br>LEVEL 3 COMMUNICATIONS, LLC,           )<br>d/b/a Lumen Technologies,           )<br>INTELIQUENT, INC.;           )<br>NOS COMMUNICATIONS, INC., and           )<br>TELIAX, INC.,           )<br>           )<br>    Defendants.           ) | Case No.: 5:19-CV-00237-JPB |

## **CERTIFICATE OF SERVICE**

I, William J. Ihlenfeld, II, certify that on February 3, 2021, I filed the foregoing with the Clerk of Court for the United States District Court for the Northern District of West Virginia using the CM/ECF system, which will serve this document on all counsel of record.

                                          By:     /s/ William J. Ihlenfeld, II

William J. Ihlenfeld, II (#7465)
Bowles Rice, LLP
P.O. Box 390
Wheeling, WV 26003
(304) 230-1800
wihlenfeld@bowlesrice.com

12482086.1