IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

WHEELING DIVISION

DIANA MEY, individually
and on behalf of a proposed class,

      Plaintiff,

v.                              Civil Action No. 5:19-cv-00237-JPB

ALL ACCESS TELECOM, INC.;
BANDWIDTH INC.;
CENTURYLINK COMMUNICATIONS, LLC
and LEVEL 3 COMMUNICATIONS, LLC;
INTELIQUENT, INC.;
NOS COMMUNICATIONS, INC.; and
TELIAX, INC.;

      Defendants.


**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

1

# TABLE OF CONTENTS

**Page**

ARGUMENT SUMMARY ................................................................................................ 2

ARGUMENT ................................................................................................................ 3

    A.    The Court has specific jurisdiction over each Defendant. ............................... 3

        1.    Legal standard for personal jurisdiction. .................................................. 3

        2.    Because each Defendant knowingly made illegal calls into West Virginia, each purposely availed itself of the privilege of conducting business here and is answerable for the legality of those calls. ................................. 4

    B.    Ms. Mey has stated a claim under the TCPA. ................................................ 8

        1.    TCPA liability extends to those who knowingly allow, willfully enable, or actively participate in making unlawful calls. .................................... 8

        2.    Ms. Mey alleged that each Defendant knowingly allowed, willfully enabled, and actively participated in making unlawful calls. ....................... 9

        3.    Ample authority supports Ms. Mey's claims. ......................................... 11

        4.    With the Court's leave, Ms. Mey will file an amended complaint to address Defendant NOS's Rule 12(b)(6) challenges. ............................ 15

    C.    The Defendants' constitutionality challenge rests on an obvious misreading of *AAPC*. 15

        1.    *AAPC* did not invalidate the autodialer restriction. ............................... 16

        2.    The vast majority of courts reject Defendants' argument. ....................... 18

    D.    The Unidentified Spoofer and other providers are neither necessary nor indispensable parties. .............................................................................. 20

CONCLUSION ............................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Abramson v. CWS Apartment Homes, LLC*,
    No. CV 16-426, 2016 WL 6236370 (W.D. Pa. Oct. 24, 2016) ............................................4, 5

*Abramson v. Federal Ins. Co.*,
    No. 8:10-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020) ........................................19

*Adzhikosyan v. Callfire, Inc.*,
    2019 WL 7856759 (C.D. Cal. Nov. 20, 2019)......................................................................13

*Am. Gen. Life and Acc. Ins. Co. v. Wood*,
    429 F.3d 83 (4th Cir. 2005) ................................................................................................20

*Aronson v. Generation Mortg. Co.*,
    No. 13-1702, 2014 WL 641622 (W.D. Pa. Feb. 19, 2014)...................................................21

*Baker v. Caribbean Cruise Line, Inc.*,
    No. CV 13-8246, 2014 WL 880634 (D. Ariz. Mar. 6, 2014) ..................................................5

*Barr v. American Association of Political Consultants*,
    140 S. Ct. 2335 (2020) .............................................................................................. *passim*

*Bauman v. Saxe*,
    No. 2:14-cv-01125, 2019 WL 591439 (D. Nev. Feb 13, 2019)............................................14

*Branham v. ISI Alarms, Inc.*,
    No. 12-CV-1012 ARR MDG, 2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013) ........................5

*Buchanan v. Sullivan*,
    No. 8:20-cv-301, 2020 WL 6381563 (D. Neb. Oct. 30, 2020)............................................19

*Burton v. Fundmerica, Inc.*,
    No. 8:19-cv-119, 2020 WL 4504303 (D. Neb. Aug. 5, 2020)..............................................19

*C-Mart, Inc. v. Metro. Life Ins. Co.*,
    13-80561-CIV, 2014 WL 12300313 (S.D. Fla. July 14, 2014) ............................................21

*Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*,
    259 F.3d 209 (4th Cir. 2001) ................................................................................................3

*Creasy v. Charter Commc'ns, Inc.*,
    No. 20-cv-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020)............................................18

4825-8285-3343, v. 1

*Cunningham v. Montes*,
  378 F. Supp. 3d 741 (W.D. Wis. 2019) .......................................................................10, 12

*Distasio v. Edible Arrangements, LLC*,
  No. 3:16-cv-00538, 2021 U.S. Dist. LEXIS 18380 (D. Conn., Feb. 1, 2021)........................19

*Drew v. Lexington Consumer Advocacy*,
  No. 16-CV-00200-LB, 2016 WL 9185292 (N.D. Cal. Aug. 11, 2016), *report
  and recommendation adopted sub nom.*, No. C 16-00200 ......................................................5

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (W.D. Wash. Oct. 1, 2019) ...............................................................12, 13

*Heidorn v. BDD Mktg. & Mgmt. Co., LLC*,
  No. C-13-00229 JCS, 2013 WL 6571629 (N.D. Cal. Aug. 19, 2013).......................................5

*Hudak v. Berkley Grp., Inc.*,
  No. 3:13-CV-00089-WWE, 2014 WL 354676 (D. Conn. Jan. 23, 2014) ............................5, 6

*Hurley v. Messer*,
  No. 3:16-9949, 2018 WL 4854082 (S.D. W. Va. Oct. 4, 2018)............................................14

*Hurley v. Messer*,
  No. 3:16-9949, 2018 WL 4927218 (S.D. W. Va. Oct. 10, 2018).....................................12, 14

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
  No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020) ...........................................18

*Inland Bank & Tr. v. Oracle Flexible Packaging, Inc.*,
  No. 17 C 604, 2017 WL 3521166 (N.D. Ill. Aug. 15, 2017)....................................................4

*Intercarrier Comm. LLC v. WhatsApp Inc.*,
  No. 3:12-CV-776-JAG, 2013 WL 5230631 (E.D. Va. Sept. 13, 2013)....................................7

*Jones v. U-Haul Co.*,
  16 F. Supp. 3d 922 (S.D. Ohio 2014) .................................................................................16

*Keim v. ADF MidAtlantic, LLC*,
  199 F. Supp. 3d 1362 (S.D. Fla. 2016) ..................................................................................7

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2006) .............................................................................................15

*Less v. Quest Diagnostics Inc.*,
  No. 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio, Jan. 26, 2021) .........................................19

*Lindenbaum v. Realgy, LLC*,
  No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020)........................................18

iii

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F. Supp. 3d 795 (E.D. Tex. 2014) ..................................................................4

*Lucas v. Telemarketer Calling from (407) 476-5680*,
   No. 18-3633, 2019 WL 3021233 (6th Cir. May 29, 2019) ...................................13

*Luna v. Shac, L.L.C.*,
   No. C14-00607, 2014 WL 3421514 (N.D. Cal. July 14, 2014) .............................5

*Maryland v. Universal Elections*,
   787 F. Supp. 2d 408 (D. Md. 2011) ..................................................................20

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ...........................................................................4

*McCurley v. Royal Sea Cruises, Inc.*,
   No. 17-cv-00986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021) ...........................19

*Meeks v. Buffalo Wild Wings, Inc.*,
   2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ...............................................12, 13

*Mey v. Castle Law Grp., PC*,
   416 F. Supp. 3d 580 (N.D. W. Va. 2019) ............................................................4

*Oklahoma v. Pope*,
   516 F.3d 1214 (10th Cir. 2008) .........................................................................16

*Ott v. Mortg. Inv'rs Corp. of Ohio*,
   65 F. Supp. 3d 1046 (D. Or. 2014) .....................................................................6

*Payton v. Kale Realty, LLC*,
   No. 13 C 8002, 2014 WL 4214917 (N.D. Ill. Aug. 26, 2014) ..............................4

*Rieker v. National Car Cure, LLC*,
   No. 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021) ...........................19

*Schmidt v. Amer Assist A/R Sols., Inc.*,
   No. 20-cv-230, 2020 WL 6135181 (D. Ariz. Oct. 19, 2020) ..............................19

*Selou v. Integrity Solution Servs. Inc.*,
   2016 WL 612756 (E.D. Mich. Feb. 16, 2016) ...............................................12, 13

*Shelton v. Nat'l Gas & Elec., LLC*,
   No. CV 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) .............................5

*Shen v. Tricolor Cal. Auto Grp., LLC*,
   No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal., Dec. 17, 2020) ..........................19

iv

*Stoutt v. Travis Credit Union*,
   No. 2:20-cv-01280, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021) ..............................................19

*Temple v. Synthes Corp.*,
   498 U.S. 5 (1990) ....................................................................................................................21

*Thunder Basin Coal Co. v. S.W. Pub. Serv. Co.*,
   104 F.3d 1205 (10th Cir. 1997) ..............................................................................................21

*Tire Eng'g & Dist., LLC v. Shandong Linglong Rubber Co.*,
   682 F.3d 292 (4th Cir. 2012) ....................................................................................................3

*Trujillo v. Free Energy Sav. Co., LLC*,
   No. 5:19-cv-0272, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020)..........................................19

*UMG Recordings, Inc. v. Kurbanov*,
   963 F.3d 344 (4th Cir. 2020) ................................................................................................4, 6

*United States v. Miselis*,
   972 F.3d 518 (4th Cir. 2020) ............................................................................................17, 18

*Universal Leather, LLC v. Koro AR, S.A.*,
   773 F.3d 553 (4th Cir. 2014) ....................................................................................................3

*Weiss v. Grand Campus Living, Inc.*,
   No. 118CV00434JRSTAB, 2019 WL 1206167 (S.D. Ind. Mar. 14, 2019)...............................7

*Wick v. Twilio*,
   No. C19-00914, 2017 WL 2964855 (W.D. Wash. July 12, 2017) ..........................................12

*Wright v. Linebarger Googan Blair & Sampson, LLP*,
   782 F. Supp. 2d 593 (W.D. Tenn. 2011)..................................................................................21

*Zaletel v. Prisma Labs, Inc.*,
   226 F. Supp. 3d 599 (E.D. Va. 2016) .......................................................................................7

**Rules**

Fed. R. Civ. P. 5.1 .......................................................................................................................16

Fed. R. Civ. P. 15(a)(2)................................................................................................................15

Fed. R. Civ. P. 19(a)(2)................................................................................................................20

Fed. R. Civ. P. 19(b) ...................................................................................................................20

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................................................................8, 16

47 U.S.C. § 608 .......................................................................................................................18

**Other Authorities**

47 C.F.R. § 64.1200(a)(1) ........................................................................................................8

47 C.F.R. §64.1200(k)(2)(i) ...................................................................................................14

30 FCC Rcd. 7961 (June 18, 2015) ................................................................................ *passim*

## ARGUMENT SUMMARY

Scam robocalls are "a scourge visited upon millions of Americans every day," and are "real threats to American consumers." Second Am. Compl., Doc. 42 ¶ 1 ("SAC"). These calls, which often purport to be from someone "calling from Medicare," or "Heather" from the vague but omnipresent "Cardholder Services," *id.* ¶¶ 28-69, violate the Telephone Consumer Protection Act because they are placed to recipients' cell phones via an autodialer or prerecorded message without written consent.

While these calls menace consumers, they benefit two sets of players: the scammers who originate them but conceal their identities (in the SAC, the "Unidentified Spoofers"), and the downstream companies who get paid every time they play their essential role in making the calls to recipients like the Plaintiff, Diana Mey.

The second group of players are Defendants here. They are the *sine qua non* of scam robocalls. And when they pass on an "obviously spoofed" robocall — one that they *know* originates from a facially invalid telephone number such as "000-000-0000" and the eleven-digit number "485-421-5231-4" — they *know* the call is illegal. They could stop it, but they don't because they receive millions of dollars to make these calls. *Id.* ¶¶ 5-14.

It took Ms. Mey a year of issuing subpoenas to identify these Defendants, who have never been held responsible for their willing, knowing, and profitable participation in the robocall scourge. But if Ms. Mey's liability theory is one of first impression, it is also firmly rooted in law, particularly the TCPA, which must be applied to new technologies and services to further congressional intent to protect consumers from the nuisance and invasion of privacy caused by illegal robocalls.

The Court should deny the motions to dismiss. As explained below:

4825-8285-3343, v. 1

- The Court has specific personal jurisdiction over each Defendant because each knowingly and intentionally made calls to Ms. Mey in West Virginia, knowing hers was a West Virginia phone number, and each therefore purposefully availed itself of the privilege of conducting business here, and the claims arise out of that activity (Part A);

- Because the Defendants actively participated in making the calls, and willfully and knowingly enabled and allowed them, Ms. Mey has stated a claim for direct violations of the TCPA (Part B);

- The Defendants' assertions that the TCPA was unconstitutional at the time of the calls rests on a discredited theory that most courts have rejected (Part C); and

- All necessary parties are joined in this action (Part D).

## ARGUMENT

### A.  The Court has specific jurisdiction over each Defendant.

#### 1.  Legal standard for personal jurisdiction.

When assessing personal jurisdiction, the court is "to construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [plaintiff]." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014).

To examine whether a defendant has sufficient minimum contacts with the forum state to establish specific jurisdiction, the Court must consider: (1) the extent to which the defendant has purposely availed itself of the privilege of conducting business in the forum state; (2) whether the plaintiff's claims arise out of the defendant's activity in the that state; and (3) whether exercising personal jurisdiction would be "constitutionally reasonable." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001).

Here, only the first prong is at issue. The analysis under the second prong "is generally not complicated," and where, as here, "activity in the forum state is the genesis of the dispute, this prong is easily satisfied." *Tire Eng'g & Dist., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) (internal quotation marks omitted). And Defendants do not argue

3

that exercising jurisdiction would not be "constitutionally reasonable." Bandwidth *et al.* Mem. at 20-23; Lumen Mem. at 7-11; NOS Mem. at 5-9; All Access Mem. at 3-9. They have thus waived the argument. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014); *Inland Bank & Tr. v. Oracle Flexible Packaging, Inc.*, No. 17 C 604, 2017 WL 3521166, at *3 (N.D. Ill. Aug. 15, 2017).

> **2. Because each Defendant knowingly made illegal calls into West Virginia, each purposely availed itself of the privilege of conducting business here and is answerable for the legality of those calls.**

Ms. Mey's claims arise out of Defendants' conduct in making robocalls to her West Virginia phone number, conferring specific jurisdiction.[1] *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351-54 (4th Cir. 2020) ("[T]he touchstone remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state . . . creating a substantial connection with the forum state.") (cleaned up).

Each Defendant played its essential role in making the calls to West Virginia, and each call was "received by Plaintiff . . . in this District." SAC ¶ 20. No more is needed to establish specific jurisdiction in a TCPA action. *Mey v. Castle Law Grp., PC*, 416 F. Supp. 3d 580, 586 (N.D. W. Va. 2019) ("[I]n the context of the TCPA, . . . personal jurisdiction is proper in the District where an unlawful communication is received.").[2] Other courts overwhelmingly agree.[3]

---

[1] All Access challenges personal jurisdiction because "the TCPA does not apply to common carriers." All Access Mem. (Doc. 76) at 6. This is not a jurisdictional argument, but a Rule 12(b)(6) argument, and it is wrong for the reasons discussed in Part B, *infra*.

Defendant NOS challenges jurisdiction because its affiliate ANI was involved in the call alleged in the SAC. This can be corrected through substitution or amendment, which Ms. Mey has discussed with NOS's counsel, and can easily address.

[2] Lumen Defendants discuss an earlier order in *Castle Law*, not the decision cited here. *See* Lumen Mem. at 10-11.

[3] *See also Payton v. Kale Realty, LLC*, No. 13 C 8002, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014) ("[C]ourts have repeatedly held that sending a message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction[.]"); *Abramson v. CWS Apartment Homes,*

4

Even more, each Defendant *knew* the call was to be received in West Virginia, as each knew the call was to be received by a phone number with a 304-area code. Golan Decl. ¶¶ 5-18, attached as Exhibit A (providing screenshots of call records each Defendant provided in discovery). Of equal importance, each Defendant intentionally and affirmatively acted to ensure the call got to its West Virginia destination. If any Defendant had not played its part in making the calls, the calls never would have rung to Ms. Mey's phone in this District. *See Abramson v. CWS Apartment Homes, LLC*, No. CV 16-426, 2016 WL 6236370, at *4 (W.D. Pa. Oct. 24, 2016) ("District courts across the country have found purposeful direction based on allegations a defendant sent its telemarketing call to a number bearing the state's area code.") (collecting cases); *Branham v. ISI Alarms, Inc.*, No. 12-CV-1012 ARR MDG, 2013 WL 4710588, at *8 (E.D.N.Y. Aug. 30, 2013) ("[S]ince the TCPA is essentially a strict liability statute, defendants reasonably should have anticipated that the use of such a system to call a New York cell-phone number could subject them to being haled into court in New York.") (cleaned up).

Glossing over the facts and law, Defendants challenge jurisdiction because they "simply acted as a middleman." Bandwidth *et al.* Mem. at 23; *accord* Lumen Mem. at 10. Not true. Each Defendant delivered the call to the next player in line and directly instructed them to deliver the call to Ms. Mey's West Virginia phone number. Scorza Decl. ¶¶ 5-8 (Doc. 78-3) (Inteliquent);

---

*LLC*, No. CV 16-426, 2016 WL 6236370, at *4 (W.D. Pa. Oct. 24, 2016) ("District courts across the country have found purposeful direction based on allegations a defendant sent its telemarketing call to a number bearing the state's area code.") (citing cases); *Branham v. ISI Alarms, Inc.*, No. 12-CV-1012 ARR MDG, 2013 WL 4710588, at *8 (E.D.N.Y. Aug. 30, 2013); *Luna v. Shac, L.L.C.*, No. C14-00607, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (same); *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (same); *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019) (same); *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *3 (D. Conn. Jan. 23, 2014) (same); *Drew v. Lexington Consumer Advocacy*, No. 16-CV-00200-LB, 2016 WL 9185292, at *3 (N.D. Cal. Aug. 11, 2016) (same), *report and recommendation adopted sub nom.*, No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016); *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. C-13-00229 JCS, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013) (same), *report and recommendation adopted*, No. 13-cv-00229-YGR, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013).

Milko Decl. ¶ 9 (Doc. 78-2) (Bandwidth); Linse Decl. ¶ 3 (Doc. 84-1) (CenturyLink, Level 3);

Perea Decl. ¶ 6 (Doc. 81-2) (ANI).

For example, CenturyLink delivered the call to Level 3 and instructed it to deliver the call

to Ms. Mey's West Virginia phone number, and Level 3 did the same to AT&T, who

consummated the call to her West Virginia line.[4] Linse Decl. ¶ 3. Each Defendant was paid to

send these calls into West Virginia, each knew the calls were headed to West Virginia, and the

calls were in fact received in West Virginia. Because each Defendant profited from its exposure

to this market and purposefully availed themselves of the privilege of conducting business here,

they are answerable in West Virginia courts for their conduct in making these West Virginia

calls. *See UMG Recordings*, 963 F.3d at 354 (rejecting defendant's argument that it lacks control

over what advertising is displayed; "it is immaterial whether the third-party advertisers or the

defendant targeted [in-state] residents . . . [the defendant] knows — either actually or

constructively — about its [in-state] user base, and that it exploits that base for commercial

gain.").

Thus, courts hold personal jurisdiction exists even over a defendant playing only a

supporting role in the TCPA violation. *See, e.g.*, *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp.

3d 1046, 1057 (D. Or. 2014) (specific jurisdiction over defendants who had "mere oversight" of

telemarketing operation that included phone numbers with in-state area codes); *Hudak v. Berkley

Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *2 (D. Conn. Jan. 23, 2014)

("Defendants deny that they made any of the calls at issue but do not deny that they caused them

---

[4] In fact, CenturyLink and Level 3 directed hundreds of thousands of calls to West Virginia, generating millions in revenue. *See, e.g.*, Lumen Mem. at 5 (stating that the Lumen Defendants generated more than $20 million in revenue from West Virginia in 2019).

to be made."); *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1368 (S.D. Fla. 2016) (specific jurisdiction over defendants hired to send text messages received in-state).

Defendants cite no case addressing specific jurisdiction in a TCPA suit. Instead, they cite patent or trademark infringement cases. Bandwidth *et al.* Mem. at 22; Lumen Mem. at 8-9. But specific jurisdiction is claim specific, asking whether the conduct giving rise to the claim was directed to the state. Thus, "[a]lthough a text message would be a thin reed to lean on for personal jurisdiction in a typical breach-of-contract matter, it constitutes purposeful direction in this TCPA suit, where the text messages are themselves the gravamen of the complaint." *Weiss v. Grand Campus Living, Inc.*, No. 118CV00434JRSTAB, 2019 WL 1206167, at *3 (S.D. Ind. Mar. 14, 2019).

Moreover, neither case that Defendants cite helps them. In *Intercarrier Comm. LLC v. WhatsApp Inc.,* No. 3:12-CV-776-JAG, 2013 WL 5230631 (E.D. Va. Sept. 13, 2013) and *Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599 (E.D. Va. 2016), the plaintiffs asserted jurisdiction not based on anything the defendants did, but on the fact that "some" people used the allegedly infringing products in the state. *Intercarrier,* 2013 WL 5230631, at *4; *Zaletel,* 226 F. Supp. 3d at 610. Here, in comparison, jurisdiction is based solely on what the Defendants did: making illegal calls to Ms. Mey knowing they would be received in West Virginia. Golan Decl. ¶¶ 5-18. Further, in those cases, the plaintiffs did not allege the defendants knew the products were being used in the state. *Intercarrier*, 2013 WL 5230631, at *4 (users only had an "option" to share their location with the defendant); *Zaletel*, 226 F. Supp. 3d at 610 (defendant did not know users' location). By contrast, here the Defendants knew the calls were intended to be delivered to a West Virginia telephone number. Golan Decl. ¶¶ 5-18.

**B. Ms. Mey has stated a claim under the TCPA.**

    **1. TCPA liability extends to those who knowingly allow, willfully enable, or actively participate in making unlawful calls.**

The TCPA imposes liability on those who "make" or "initiate" a call using an automatic telephone dialing system or prerecorded voice to a cellular telephone without the recipient's consent. 47 U.S.C. § 227(b)(1)(A)(iii) (imposing liability on entities that "make" a prohibited call); 47 C.F.R. § 64.1200(a)(1) (FCC's implementing rule; no person or entity may "initiate" a prohibited call).

Neither the TCPA nor its implementing rules define "make" or "initiate," and therefore in 2015 the FCC provided interpretative guidance and outlined factors to be considered in determining who makes or initiates a call. 30 FCC Rcd. 7961, ¶ 29 (June 18, 2015) ("2015 Declaratory Ruling"). That ruling provides the framework for analyzing the Defendants' claim to Rule 12(b)(6) dismissal.

In the 2015 Declaratory Ruling, the FCC stated that changes in calling technology, coupled with the need to further Congress's intent of protecting consumer privacy against unwanted robocalls, warranted a broad understanding of the terms "make" or "initiate." The FCC concluded that one must evaluate "the totality of the facts and circumstances surrounding the placing of a particular call to determine 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *Id.* ¶ 30.

Seeming to envision the very suit Ms. Mey brings here, the FCC identified several factors relevant "in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them": whether the entity "willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID," "knowingly allowed its

client(s) to use [its] platform for unlawful purposes[,]" or allows a client to use its services after being notified that its clients are using it unlawfully. *Id.* & n.110. These factors are not exhaustive. As the FCC summed it up, it is appropriate to "consider all facts and circumstances surrounding any possible violation(s) before determining how liability, if any, should be applied." *Id.*

> **2. Ms. Mey alleged that each Defendant knowingly allowed, willfully enabled, and actively participated in making unlawful calls.**

Ms. Mey's well-pled allegations plausibly establish that each Defendant knew the calls were unlawful and could have stopped them, but instead knowingly allowed, willfully enabled, and actively participated in making each call.

As Plaintiff alleges, in line with Rule 8's notice-pleading obligation, each Defendant:

- "know[s] when these unlawful spoofed robocalls are being placed through their systems, which effectively 'light up' when the spoofer generates enormous numbers of obviously spoofed calls[,]" SAC ¶ 13;
- "knew that the caller spoofed an invalid number, and [each] call [alleged in the complaint] was not for a lawful purpose," *id.* ¶ 25, "and that no subscriber could lawfully originate calls from that number," *id.* ¶ 6.e;
- "could easily block the robocalls from being connected." *id.* ¶ 6.f, *see also id.* ¶ 16.g;
- "could make simple programming changes to stop [the calls]," *id.* ¶ 14;
- "took the steps necessary to physically place obviously spoofed robocalls to Plaintiff and class members," *id.* ¶ 16.c;
- was an "active participant[]" *id.* ¶ 16.f, who "controlled the sending of the spoofed robocalls," *id.* ¶ 16.g;
- passed on the spoofed number "as legitimate, knowing it not to be," *id.* ¶ 12; *see also id.* ¶16.d, "willfully . . . circumventing the accuracy of caller ID," *id.* ¶ 12, knowing this "increased the likelihood that the recipient would answer the call," *id.* ¶ 11;
- "[p]rovided the avenue and means for the Unidentified Spoofer to generate scores of robocalls from an obviously spoofed number," *id.* ¶ 16a, and "knowingly . . . allowed [their services] to be used for unlawful purposes," *id.* ¶ 16.b, *see also id.* ¶ 16e;
- "because they profit from them," *id.* ¶ 6.f;

4825-8285-3343, v. 1

- "willfully assisted the Unidentified Spoofer in successfully completing the spoofed calls," *id*. ¶ 10; *see also id.* ¶ 12;
- "willfully enabled the fraudulent spoofing of telephone numbers," *id* ¶ 9, *see also id.* ¶ 16.b;
- "knowingly and willfully played its role and completed the critical steps necessary to make these calls," *id.* ¶ 7; *see also id.* ¶¶ 8, 16.h, to consumers already hounded by scores of other nuisance robocalls[,]" *id.* ¶ 14; *see also id.* ¶ 25.

In short, Defendants "assist[ed] telemarketers in blocking Caller ID" and "knowingly allowed its client(s) to use [its] platform for unlawful purposes[,]" a scenario that the 2015 Declaratory Ruling stated would establish that the "provider is so involved in placing the calls as to be deemed to have initiated them." 30 FCC Rcd. 7961, ¶ 30. Other facts also further support liability, which will be further investigated in discovery. *See, e.g.,* SAC ¶¶ 15, 23a, 23.b, 69 (Defendant Teliax internally identified the call as "JUNK" but sent it to Ms. Mey regardless, FCC identified Defendant All Access as a "gateway" for scam robocalls, and Lumen Defendants claimed to FCC that it "blocks invalid numbers" but nonetheless permitted the calls to be sent to Ms. Mey); 30 FCC Rcd. 7961, ¶ 30 n.110 ("For example, if the Commission staff notifies a platform provider that its service is being used unlawfully by its clients and the platform provider then allows such usage to continue after this warning, we will consider the fact . . . to be a possible indicator that the platform provider is actively participating in the making or initiating of the calls at issue."); *Cunningham v. Montes*, 378 F. Supp. 3d 741, 749 (W.D. Wis. 2019) (denying defendant summary judgment based on, *inter alia*, evidence that defendant "had been warned that his website was being used unlawfully by its clients but nonetheless allowed such usage to continue after this warning"), citing 30 FCC Rcd. at 7961 ¶ 30 n.110.[5]

---

[5] As expected, Defendants dispute these allegations, Bandwidth *et al.* Mem. at 11 n.5, which only further demonstrates how Defendants' arguments fail to show Plaintiff's allegations are legally inadequate.

Astonishingly, *none* of the Defendants address these allegations head on — or at all. Instead, their lead argument relies on statements of a few senators thirty years ago that broadly reference telephone carriers' then-minimal role in passing calls along through their switchboards, *See* Bandwidth *et al*. Mem. at 7-8, All Access Mem. at 11; or on cases predating the 2015 Declaratory Ruling. Bandwidth *et al*. Mem. at 6, 8, 10; All Access Mem. at 6-11. However, none of the Defendants discuss the spot-on FCC factors outlined in the 2015 Declaratory Ruling to help determine when a company steps beyond being a mere carrier and becomes "so involved in placing the calls as to be deemed to have initiated them." 30 FCC Rcd. 7961, ¶ 30.

Beyond the Defendants' reliance on technologically ancient statements of legislators and stale case law in the face of recent and on-point agency guidance, the Defendants deploy spin to minimize their roles, and argue that TCPA liability attaches only upon proof that they "control[led] the content of the calls or whether, to whom or when the calls are made[.]" Bandwidth *et al.* Mem. at 8. *See also* All Access Mem. at 7-9.

Two responses: (1) "control" is not the determinative factor; the 2015 Declaratory Ruling adopts a broader and more fact-sensitive analysis, which the Defendants do not mention; and (2) Ms. Mey *does* allege that the Defendants "controlled the sending of the spoofed robocalls and could easily have stopped them." SAC ¶ 16.g.  They could have declined sending the spoofed robocall. SAC ¶¶ 6.f, 16.g. They did not. They could have declined to pass along the requested spoofed number as legitimate, and instead identified it as invalid. *Id.* ¶ 11. They did not, and instead circumvented Caller ID and increased the likelihood that the calls would be answered. *Id.* ¶¶ 11, 12, 16.d.

### 3.  Ample authority supports Ms. Mey's claims.

Defendants do not address the facts alleged. Instead, they urge a blanket TCPA exemption for telecommunications companies, and cite cases dismissing TCPA claims against

4825-8285-3343, v. 1

passive entities. Bandwidth *et al.* Mem. at 8; All Access Mem. at 7-9.

Defendants' failure to address the facts alleged is fatal to their motion. "Contrary to [defendant's] argument, the FCC has not created a blanket rule immunizing from TCPA liability cloud-based service providers that transmit third-party content. Rather, the totality of the facts and circumstances surrounding the call must be considered[.]" *Wick v. Twilio,* No. C19-00914, 2017 WL 2964855, *4 (W.D. Wash. July 12, 2017) (denying motion to dismiss because defendant "fails to acknowledge, much less address, many of plaintiff's allegations[.]"). As one court put it, "The 'totality of the circumstances' approach set out in the 2015 FCC Order will not provide easy answers in close cases. But it makes one thing clear: a provider of auto-dialing services cannot blithely sit back and blame his customers for any TCPA violations that result from their use of his service." *Cunningham*, 378 F. Supp. 3d at 748 (denying defendant summary judgment). *See also Hurley v. Messer,* No. 3:16-9949, 2018 WL 4927218 (S.D. W. Va. Oct. 10, 2018) ("whether or not [the defendant] may be held liable will depend upon a totality of the circumstances analysis, which is not appropriate on a motion to dismiss given the allegations in this case.").

The Defendants also rely on cases that predate the 2015 Declaratory Ruling. *See* Bandwidth *et al.* Mem. at 6, 8, 10; All Access Mem. at 6-11. They cite only a handful of cases decided afterward, but none involve similar facts. Instead, these cases addressed situations where the defendants had no reason to suspect that the calls were illegal and could not act to stop them. Here, however, Defendants knew the calls were illegal, could have stopped them, but decided not to.

Unlike the defendants in *Selou, Frank,* and *Meeks*, who had no indication that illegal activity was afoot in calls from lenders to borrowers, messages from retailers to customers, and

12

texts from restaurants to patrons (*Selou v. Integrity Solution Servs. Inc.,* 2016 WL 612756, *4 (E.D. Mich. Feb. 16, 2016); *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (W.D. Wash. Oct. 1, 2019); *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, *4 (N.D. Cal. Mar. 28, 2018)), Ms. Mey here alleges that the Defendants enabled obviously illegal robocalls and assisted spoofing with obviously invalid numbers. SAC ¶¶ 6.e, 11, 13, 25.

Here, Defendants decided whether to send the calls and what number to identify as the sender, as they could have stopped the calls or declined to pass along the spoofed number as valid. SAC ¶ 6.f, 14, 16.g. Thus, her claim is different from cases where the plaintiffs could not allege the defendant decided "whether . . . the text message is sent, or what the text message said." *Frank*, 2019 WL 4855378, at *2; *Meeks,* 2018 WL 1524067, *4 ("the complaint shows that the restaurants plaintiff visited, not Yelp, decided whether to send a text message to plaintiff.") (emphasis omitted).

Defendants' other cases are equally inapposite. Unlike *Adzhikosyan,* Ms. Mey *can* explain how she knows Defendants sent the calls. *See* Golan Decl. ¶¶ 7-18. *Adzhikosyan v. Callfire, Inc.*, 2019 WL 7856759, at *3 (C.D. Cal. Nov. 20, 2019) (dismissing claim because plaintiff could not "explain how he knows that Defendant, rather than the parties that identified themselves in the messages, . . . sent the texts."). In *Lucas*, the plaintiff's claim failed not because he failed to state a TCPA claim, but because his 2014 complaint failed to allege vicarious liability and he delayed more than two years before seeking leave to file an amended complaint alleging direct liability under the 2015 Declaratory Ruling. *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *6 (6th Cir. May 29, 2019) (affirming district court ruling that "Lucas's decision to wait until July 2017 to request to amend his complaint based, in part, on a 2015 FCC ruling constituted excessive delay").

13

Indeed, courts refuse to dismiss suits where the defendant knew that illegal activity was underway. For instance, in *Hurley v. Messer,* No. 3:16-9949, 2018 WL 4854082 (S.D. W. Va. Oct. 4, 2018), the district court refused to dismiss TCPA claims against VoIP providers who knew of the caller's illegal conduct and could have stopped it, but nevertheless permitted robocalls to be broadcast through their systems. The court analyzed the factors listed in the 2015 Declaratory Ruling and concluded that the allegations "state a plausible claim that [the VoIP providers] offered a calling platform and 'knowingly allowed [their] client(s) to use that platform for unlawful purposes.'" *Id.* at *4, quoting 2015 Declaratory Ruling ¶ 30.

Similarly, a week later, the court denied dismissal of TCPA claims against another defendant alleged to have knowingly allowed its autodialing software to be used for an unlawful purpose. *Hurley v. Messer,* No. 3:16-9949, 2018 WL 4927218 (S.D. W. Va. Oct. 10, 2018). And in *Bauman v. Saxe,* No. 2:14-cv-01125, 2019 WL 591439, at *6 (D. Nev. Feb 13, 2019), the court held that a text platform provider who offered functionality allowing clients to bypass spam filters faced potential TCPA liability.

Under the correct framework for analyzing Ms. Mey's claims, Defendants must show that under the totality of the facts and circumstances — itself a fact-bound test that is not amenable to Rule 12(b)(6) dismissal — Ms. Mey has not given them notice of the basis for her claim that these Defendants were so involved in placing the calls as to be deemed to have initiated them. Defendants have not made this showing, and the Court should allow the case to proceed.[6]

---

[6] Defendants also devote five pages of briefing to a straw man. Ms. Mey does not, as the Defendants put it, "use the voluntary call blocking rules to create liability where none exists." Bandwidth *et al.* Mem. at 11. The call blocking rules are referenced in the complaint only to support the allegation that the Defendants "could easily block the robocalls from being connected, 47 C.F.R. §64.1200(k)(2)(i), but they elect not to because they profit from them." SAC ¶ 6.f. As explained above, this fact is among the many relevant to the Defendants' willing and knowing participation in making obviously spoofed robocalls.

4825-8285-3343, v. 1

**4.   With the Court's leave, Ms. Mey will file an amended complaint to address Defendant NOS's Rule 12(b)(6) challenges.**

Defendant NOS seeks Rule 12(b)(6) dismissal on additional grounds: (1) an affiliated company called ANI, and not NOS, "acted as the intermediate carrier with respect to the February 13 call],]" NOS Mem. at 9, and (2) Ms. Mey's allegations regarding that call do not sufficiently allege use of an ATDS or prerecorded voice, *id.* at 11-12.

Ms. Mey's counsel has discussed with NOS's counsel the filing of an amended pleading to address these challenges, which can easily be done. Counsel respectfully submits the time to amend is after the Court has addressed the other grounds asserted in the Defendants' motions, as an amended pleading before that time could unnecessarily trigger a new round of motions to dismiss and delay the case. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.") (internal citation omitted).

For this reason, Ms. Mey does not object to an order dismissing the claims against NOS without prejudice, so she can cure any deficiencies while allowing the case to otherwise progress.

**C.   The Defendants' constitutionality challenge rests on an obvious misreading of *AAPC*.**

Defendants contend the Court lacks subject matter jurisdiction over Count One because "Section 227(b)(1)(A) of the TCPA was unconstitutional during the time the calls on which Plaintiff rests her claims were made." Bandwidth *et al.* Mem. at 24. Defendants say this part of the TCPA was unconstitutional from 2015 to 2020 because the Supreme Court severed an unconstitutional and unrelated amendment to that section. *See Barr v. American Association of*

15

*Political Consultants*, 140 S. Ct. 2335 (2020) ("*AAPC*") (severing exemption for robocalls made to collect government debts).[7]

That argument is without merit, and the Court should join the chorus of courts in rejecting it as (1) resting on a misreading of the plurality opinion in *AAPC*, and (2) running counter to century-old principles of severability.

### 1.  *AAPC* did not invalidate the autodialer restriction.

Since 1991, the TCPA has prohibited the use of automatic telephone dialing systems in making calls to cell phones without the call recipient's consent. 47 U.S.C. § 227(b)(1)(A)(iii) (the "autodialer restriction"). This subsection of the TCPA forms the basis of Ms. Mey's Count One. SAC ¶¶ 88-94. In 2015, Congress carved out an exception to the autodialer restriction, permitting their use for calls made to collect debts owed to or guaranteed by the United States, regardless of the recipient's consent (the "government-debt exception").

Last year in *AAPC*, the Supreme Court held that the government-debt exception ran afoul of the First Amendment and severed the offending provision from the TCPA. *AAPC*, 140 S. Ct. at 2353-54 (plurality op.) (holding that federal law and the presumption of severability "requires" severance). As the Court stated, "With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Id.* at 2353.

---

[7] Although Defendants challenge the constitutionality of a statute, they have failed to comply with the notice required by Rule 5.1 and have waived the argument. *See* Fed. R. Civ. P. 5.1; *see, e.g.*, *Jones v. U-Haul Co.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014) ("Because Jones has not filed that notice, the Court will not consider Jones's constitutional arguments or certify her questions regarding the FAA's constitutionality to the Attorney General of the United States under Rule 5.1(b)."). In fact, failure to file such a notice has caused federal appellate courts to vacate a judgment. *Oklahoma v. Pope*, 516 F.3d 1214, 1215 (10th Cir. 2008) ("We therefore vacate the district court's judgment and remand to the district court to certify the case to the Attorney General pursuant to Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403.").

Ms. Mey does not rely on the erstwhile government-debt exception in asserting TCPA liability. And the Defendants do not claim that they are somehow impacted by the former government-debt exception. The Defendants even admit that the Supreme Court "determined that the government-debt exception would be severed from the remainder of the statute." Bandwidth *et al*. Mem. at 24, 24 n.16.

Nonetheless, the Defendants maintain the Supreme Court in *AAPC* somehow, and without saying so, rendered the TCPA's prohibition on robocalls null and void from November 2, 2015 through July 6, 2020. The Defendants are just wrong.  As the Fourth Circuit recently explained, *AAPC*'s "seven-member majority . . . agreed that the government debt exception . . . could be excised from the remainder of the statute." *United States v. Miselis*, 972 F.3d 518, 542 (4th Cir. 2020) (applying the *AAPC* majority's severability analysis in another statutory context). As Justice Breyer recognized, "the government-debt exception provides no basis for undermining the general cell phone robocall restriction." *AAPC*, 140 S. Ct. at 2362 (Breyer, J., concurring); *id.* at 2356-57 (Sotomayor, J., concurring).

The Court explained that the TCPA is covered by the Communications Act's "express severability clause," such that "[i]f any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." *Id.* at 2352 (citing 47 U.S.C. § 608). It wrote:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*Id.* at 2355 n.12 (emphasis added) (internal citations omitted). "[W]hile the Court noted that the statute included a severability clause, *see* 47 U.S.C. § 608, the Court made clear that it would have excised the government-debt exception all the same under the general 'presumption of severability[.]'" *Miselis*, 972 F.3d 518 at 542 (quoting *AAPC,* 140 S. Ct. at 2352–53).

The Supreme Court's plurality even went so far as to explain the error of the dissenting view espoused by Justice Gorsuch, joined only by Justice Thomas, that would strike down the autodialer ban in its entirety:

> Justice Gorsuch's approach . . . would in effect allow all robocalls to cell phones – notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones. That is not a judicially modest approach but is more of a wolf in sheep's clothing. . . . Justice Gorsuch's remedy would end up harming a different and far larger set of strangers to this suit – the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls.

*AAPC*, 140 S. Ct. at 2356.  Thankfully for those consumers, the autodialer restriction did not take five years off.

### 2.  The vast majority of courts reject Defendants' argument.

Instead of providing a coherent argument, Defendants ask this Court to blindly follow three outlier decisions that simply disagree with *AAPC*, ignoring fundamental principles of severability and the Supreme Court's power to issue binding precedent. Def. Bandwidth Mem. at 24–25, citing *Creasy v. Charter Commc'ns, Inc.*, No. 20-cv-1199, 2020 WL 5761117, at *2 (E.D. La. Sept. 28, 2020) (deciding that Justice Gorsuch's dissent "is the better argument"); *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915, at *7 (N.D. Ohio Oct. 29, 2020) (criticizing *AAPC* as "wav[ing] a magic wand"); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020) (relying on *Creasy* and *Lindenbaum*).

4825-8285-3343, v. 1

The Court should decline the Defendants' invitation and instead follow the Supreme Court's *AAPC* ruling and join the substantial majority of district courts. *See Shen v. Tricolor Cal. Auto Grp., LLC*, No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal., Dec. 17, 2020) (rejecting *Creasy* and concluding the Supreme Court severed only the government-debt exemption and nothing more); *Trujillo v. Free Energy Sav. Co., LLC*, No. 5:19-cv-0272, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020) (denying motion for summary judgment and rejecting *Creasy* argument); *Abramson v. Federal Ins. Co.*, No. 8:10-cv-2523, 2020 WL 7318953, at *3-4 (M.D. Fla. Dec. 11, 2020) (concluding that parties may continue to bring robocall claims after *AAPC*); *Stoutt v. Travis Credit Union*, No. 2:20-cv-01280, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021) (rejecting defendant's argument because their "view of severability has no foundation in law"); *Burton v. Fundmerica, Inc.,* No. 8:19-cv-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020) (holding government debt collection exception was severable from the TCPA and the remainder survived); *Buchanan v. Sullivan*, No. 8:20-cv-301, 2020 WL 6381563 (D. Neb. Oct. 30, 2020) (same); *Schmidt v. Amer Assist A/R Sols., Inc.*, No. 20-cv-230, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020) (holding plaintiff did not allege her debt was government-owned so *AAPC* does not apply); *Less v. Quest Diagnostics Inc.*, No. 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio, Jan. 26, 2021) (holding severance had no effect on the pre-2015 text of the TCPA); *McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-00986, 2021 WL 288164, *2-3 (S.D. Cal. Jan. 28, 2021) (denying motion to dismiss for lack of subject matter jurisdiction); *Rieker v. National Car Cure, LLC*, No. 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021) (holding the court had subject matter jurisdiction over alleged robocalls); *Distasio v. Edible Arrangements, LLC*, No. 3:16-cv-00538, 2021 U.S. Dist. LEXIS 18380, *10 (D. Conn., Feb. 1, 2021) (same).

**D. The Unidentified Spoofer and other providers are neither necessary nor indispensable parties.**

All Access contends the Unidentified Spoofers and other telecommunications companies involved in the calls are necessary and indispensable parties under Rule 19(a)(1). All Access Mem. at 11. Because Ms. Mey did not sue these parties, All Access asserts the Court should dismiss the action. *Id.* at 12.

All Access does not address the requirements of Rules 19(a) and (b), or whether the other parties' joinder would defeat this Court's jurisdiction.[8] Instead, it begins and ends with false assumptions: (1) "the only way [it] can be liable is through a vicarious liability agency theory," and (2) "there would be no consistent way to allocate the damages alleged . . . between defendants in the absence of 'Defendant Spoofer' and 'Defendant Provider.'" All Access Mem. at 12.

First, as discussed in Part B, *supra,* Ms. Mey alleges direct, not vicarious, liability.

Second, there is no need to "allocate the damages alleged . . . between defendants" because the TCPA does not apportion damages in accordance with fault. The TCPA is a strict liability statute. If All Access violated the TCPA, it is liable irrespective of whether another company is *also* liable.

Thus, as courts repeatedly hold, TCPA plaintiffs need not sue every actor involved in an illegal robocall, and co-defendants are not necessary parties to a TCPA suit under Rule 19. *See, e.g., Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 417-18 (D. Md. 2011) (holding

---

[8] All Access bears the burden to first show that other parties are "necessary" under Rule 19(a). *See Am. Gen. Life and Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). If other parties are necessary, the court must order their joinder. Fed. R. Civ. P. 19(a)(2). If the parties cannot be joined, All Access must show that the parties are "indispensable" under the factors listed in Rule 19(b) and their absence from the suit warrants dismissal. Fed. R. Civ. P. 19(b). *See Am. Gen. Life*, 429 F.3d at 92.

20

company that initiated the calls was not an indispensable party in TCPA suit); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 606 (W.D. Tenn. 2011) (rejecting defendant law firm's argument that city was necessary party in TCPA suit arising from law firm's calls under its contract with city; "the City is no more than a potential joint tortfeasor. Because complete relief can be satisfied by either of two jointly and severally liable tortfeasors, joint tortfeasors are not necessary parties under Rule 19(a)."); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 13-80561-CIV, 2014 WL 12300313, at *3 (S.D. Fla. July 14, 2014) (holding fax-blasting business "appears merely to be a joint tortfeasor" and was not necessary party in resulting TCPA suit). *See also Temple v. Synthes Corp.*, 498 U.S. 5, 7–8 (1990) (holding appellate court abused its discretion in ordering joint tortfeasors be joined under Rule 19(a)).

In its brief, All Access previews theories that it may want to pursue later, such as that the spoofer did not use an ATDS or pre-recorded voice. *See* All Access Mem. at 12. All Access is free to implead additional parties under Rule 14 or pursue these arguments during the litigation, but those possibilities do not render the spoofer or other providers "necessary" parties under Rule 19. *See, e.g.*, *Thunder Basin Coal Co. v. S.W. Pub. Serv. Co.*, 104 F.3d 1205, 1212 (10th Cir. 1997) (holding that non-party was not necessary under Rule 19 because the defendant could implead the non-party under Rule 14(a) for damages awarded); *Aronson v. Generation Mortg. Co.*, No. 13-1702, 2014 WL 641622, at *2 (W.D. Pa. Feb. 19, 2014) ("Defendant's position is that it is not liable for the alleged violations of the TCPA while the third party entities may be, an affirmative defense which may be raised without adding the third parties to this lawsuit.").

4825-8285-3343, v. 1

## CONCLUSION

For these reasons, the Court should deny the Defendants' motions to dismiss.

Respectfully submitted by:

_/s/ John W. Barrett_
John W. Barrett (WV Bar No. 7289)
Jonathan R. Marshall (WV Bar No. 10580)
Benjamin J. Hogan (WV Bar No. 12997)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: 304-345-6555
Facsimile:  304-342-1110
JBarrett@baileyglasser.com
JMarshall@baileyglasser.com
BHogan@baileyglasser.com

William Howard (admitted _pro hac vice_)
THE CONSUMER PROTECTION FIRM
401 East Jackson Street, Suite 2340
SunTrust Financial Center
Tampa, FL 33602
Telephone: 813-500-1500
Facsimile: 813-435-2369
Billy@TheConsumerProtectionFirm.com

Yvette Golan (admitted _pro hac vice_)
THE GOLAN FIRM
2000 M Street NW, Suite 750-A
Washington, DC 20036
Telephone: 866-298-4150 ext. 101
Facsimile: 928-441-8250
YGolan@tgfirm.com

_Counsel for Plaintiffs_

4825-8285-3343, v. 1

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

WHEELING DIVISION

DIANA MEY, individually
and on behalf of a proposed class,

      **Plaintiff,**

v.                                 Civil Action No. 5:19-cv-00237-JPB

ALL ACCESS TELECOM, INC.;
BANDWIDTH INC.;
CENTURYLINK COMMUNICATIONS, LLC
and LEVEL 3 COMMUNICATIONS, LLC;
INTELIQUENT, INC.;
NOS COMMUNICATIONS, INC.; and
TELIAX, INC.;

      **Defendants.**

## CERTIFICATE OF SERVICE

I, John W. Barrett, hereby certify that on March 9, 2021, a true and correct copy of

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO**

**DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** was filed using CM/ECF, the

Court's electronic notification system, which provided notice to all counsel of record.

                                            _/s/ John W. Barrettt_____
                                            John W. Barrett (WV Bar No. 7289)