IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

**WHEELING DIVISION**

DIANA MEY, individually
and on behalf of a proposed class,

  Plaintiff,

v.            Civil Action No. 5:19-cv-00237-JPB

ALL ACCESS TELECOM, INC.;
BANDWIDTH INC.;        REDACTED VERSION
CENTURYLINK COMMUNICATIONS, LLC
and LEVEL 3 COMMUNICATIONS, LLC;
INTELIQUENT, INC.;
AFFINITY NETWORK INCORPORATED; and
TELIAX, INC.;

  Defendants.


**Plaintiff's Consolidated Motion to Compel Discovery
from Defendants All Access, Bandwidth, Inteliquent, and Lumen**

# Table of Contents

**Page**

I.   Introduction ...................................................................................................... 1

II.  Relief Sought ................................................................................................... 1

III. Scope of Discovery .......................................................................................... 2

IV. Argument ........................................................................................................ 3

    A.  Bandwidth and Inteliquent should respond to RFP Nos. 27 (complaints & inquiries relating to spoofed calls and the preceding provider) and 28 (traceback requests). ........ 3

    B.  Defendants should respond fully to RFP Nos. 13 and 15 (call records showing context of the subject calls), and RFP Nos. 16 and 17 (call records showing class members and class calls). ......................................................................................... 5

        1.  RFP Nos. 13 and 15 seek documents that are relevant to each Defendant's knowledge of the unlawful nature of the Subject Calls. ........................................... 5

        2.  RFP Nos. 16 and 17 seek information relevant to identifying class members and class calls. ..................................................................................... 7

        3.  Production of the RFP Nos. 13, 15, 16, and 17 call detail records would not impose undue burden. ................................................................................... 7

           a.  All Access's principal objection is relevance, not undue burden. ..................... 8

           b.  Lumen stated no objection on any ground to RFP Nos. 16 and 17, and it has not maintained its boilerplate undue burden objections to RFP Nos. 13 and 15. ...... 8

           c.  Inteliquent's undue burden objections lack merit. ............................................. 8

           d.  Bandwidth's undue burden objections lack merit. ............................................ 11

V.  Certification .................................................................................................. 12

VI. Conclusion ................................................................................................... 12

ADDENDUM ......................................................................................................... i

## I.    Introduction

After exhaustive meet-and-confers resolving most disputed discovery issues, Plaintiff

Diana Mey has narrowed the matters requiring the Court's intervention to two categories, each of

which seeks information highly relevant to the issues this Court has stated are within the scope of

the matters a jury must consider in determining each Defendant's TCPA liability.

The categories:

- **Complaints, inquiries, and traceback requests**. Plaintiff's RFP Nos. 27 and 28 seek
  complaints, inquiries, and "traceback requests" regarding spoofed calls, including calls
  from the preceding telephone provider. This category of information is highly relevant to
  numerous liability factors, including most notably whether the defendants knew the calls
  were invalid, and whether the defendants knew their systems were being used for
  unlawful purposes.

- **Call detail records**. The call detail records sought in RFP Nos. 13 and 15 request records
  of calls placed in proximity of the subject calls and are needed to understand the context
  in which each Defendant received and transmitted the subject calls. Were the Defendants
  pounded with scores of invalid calls from the same provider at the time of the subject
  calls such that they knew or should have known that the subject calls were unlawful?
  Only those records supply the answer. RFP Nos. 16 and 17 request records needed to
  identify class members and class calls, an inquiry that is fair game given the unified class
  and merits discovery period set forth in the Court's schedule.

## II.    Relief Sought

For the reasons outlined in this Motion, Plaintiff Diana Mey requests the Court:

1. Order Defendant **All Access** to respond to RFP Nos. 13, 15, 16, and 17;

2. Order Defendant **Bandwidth** to respond to RFP Nos. 13, 15, 16, 17, 27, and 28;

3. Order Defendant **Inteliquent** to respond to RFP Nos. 13, 15, 16, 17, 27, and 28;

4. Order Defendant **Lumen** to respond to RFP Nos. 13, 15, 16, and 17, should the parties be

   unable to resolve their outstanding issues regarding those responses.

### III.   Scope of Discovery

As the Court explained in its order denying the initial motions to dismiss, "one can violate the TCPA either by taking the steps necessary to physically place a telephone call, or by being so involved in the placing of a specific telephone call as to be deemed to have initiated it." ECF No. 126 at 9, quoting 2015 FCC Order, 30 FCC Rcd. 7861, 7890 (2015). The order explained that assessment of a party's involvement in the placing of a call requires (1) "look[ing] to the totality of the facts and circumstances surrounding the placing of a particular call[,]" including:

(2)     The extent to which the defendant controls the timing . . . of the call.
(3)     The extent to which the defendant controls who receives the call.
(4)     Whether the service is "reactive in nature," meaning that it places calls in a manner that is arranged by the customer rather than the defendant.
(5)     The extent to which the defendant willfully enables fraudulent spoofing of telephone numbers by offering that functionality to clients.
(6)     The extent to which the defendant assists telemarketers in blocking caller ID by offering that functionality to clients.
(7)     Whether a defendant who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes. ECF No. 126 at 9 (internal citations omitted).

In its order denying primary jurisdiction referral, the Court further listed "just a sampling of the types of fact-bound questions a jury will have to determine[,]" including:

(8)     Did Defendants know the calls were invalid?
(9)     Did they turn a blind eye to the invalid calls to turn a profit?
(10)    Did their business model depend on a high volume of invalid calls to succeed?
(11)    Did they receive complaints about these calls or the other entities involved?
(12)    Did defendants assist the spoofers by offering functionality that allowed them to mask their identity?
(13)    Did defendants knowingly offer their services for the use of others who use their platform for unlawful purposes? ECF No. 220 at 7-8.

The factors are listed numerically for easier reference below.

2

## IV.   Argument

### A. Bandwidth and Inteliquent should respond to RFP Nos. 27 (complaints & inquiries relating to spoofed calls and the preceding provider) and 28 (traceback requests).

Perhaps *the* most important issue in determining the Defendants' TCPA liability is their knowledge of, or willful blindness to, the fact that the obviously spoofed calls made through their systems came to them with indicia of illegality – for example, because they were transmitted by a known "bad actor" whom they knew to be passing on bogus calls from scam robocallers; or because they purported to originate from numbers that could not exist, such as all-zero numbers, repeating digit numbers, or eleven-digit domestic numbers; or because the calls were transmitted en masse through autodialers, and terminated after short-to-no duration.[1]

The Defendants' knowledge, therefore, is critical, and Request Nos. 27 and 28 are narrowly drafted to obtain highly relevant information from each Defendant. Request No. 27 seeks complaints and inquiries from consumer and government agencies about calls with an invalid Caller ID, spoofed calls, and unlawful calls in general, as well as complaints and inquiries regarding the entities that passed the calls to each Defendant. *See* Addendum at i–iv, *infra*.[2] Request No. 28 seeks "traceback requests" – requests by the Industry Traceback Group,

---

[1] *See, e.g., In the Matter of Advanced Method to Target & Eliminate Unlawful Robocalls,* 32 F.C.C. Rcd. 9706, 9713 (2017) (invalid numbers that providers should block include numbers "that use an unassigned area code; that use an abbreviated dialing code, such as 911 or 411, in place of an area code; that do not contain the requisite number of digits; and that are a single digit repeated, such as 000-000-0000[.]").

[2] The Addendum, *infra* at i–vii, lists the complete requests and responses to each request at issue in this motion.

consumers, or advocacy groups to intermediate providers such as these Defendants to provide information about calls that allow one to trace their path from origin to recipient.[3]

Only **Bandwidth** and **Inteliquent** are holdouts in objecting to RFP Nos. 27 and 28; **All Access** and **Lumen** have agreed to produce these documents.

**Bandwidth** agreed to produce complaints, inquiries, and traceback requests *only* about calls purporting to originate from ████████, from whom they received the subject calls. **Bandwidth** contends that calls from other providers are irrelevant. Similarly, **Inteliquent** agreed to produce complaints and inquiries only as to the same Caller ID/ANI as the calls they passed to Ms. Mey (*i.e.,* 000-000-0000), and traceback requests regarding calls only from All Access, the preceding provider involved in the calls to Ms. Mey.

These limitations are far too narrow, as the entities that passed calls on to **Bandwidth** and **Inteliquent** may easily and frequently use *other* invalid Caller IDs/ANIs – all ones, for example – that would generate complaints and traceback requests, and therefore demonstrate knowledge by **Bandwidth** and **Inteliquent** (a) that the preceding entity is a scam robocall bad actor, and (b) that these Defendants were facilitating the making of unlawful calls through their systems. This information is squarely within scope of liability factors No. 7 (whether a defendant knowingly allowed the use of its platform), No. 8 (whether a defendant knew the calls were invalid), 9 (whether a defendant turned a blind eye to the invalid calls to turn a profit), No. 11 (whether a defendant received complaints about the calls or entities involved), and No. 13 (whether a defendant knowingly offered their services to others who use their platform for unlawful

---

[3] Although Plaintiff has broadly requested "traceback requests," that term also refers to requests by the industry-supported Industry Traceback Group, or ITG. Only government agencies can request ITG tracebacks, which are an efficient means of obtaining the same sort of information that took Plaintiff here a year to obtain through the issuance of numerous subpoenas.

purposes). And the same is true for complaints about other providers and spoofed calls. For example, if **Bandwidth** knew through complaints that all zero calls are a source of illegal robocalls – regardless of whether they were sent by ██████ or some other provider – yet failed to take any action to stop them from being made through its system, that fact demonstrates both knowledge and willfulness.

Importantly, obtaining this information would not be unduly burdensome. It can be obtained through ESI searches and searches of known data sources, which is how the other Defendants agreed to identify the requested documents.

For these reasons, Plaintiff requests the Court order **Bandwidth** and **Inteliquent** to fully respond to Request Nos. 27 and 28.

## B. Defendants should respond fully to RFP Nos. 13 and 15 (call records showing context of the subject calls), and RFP Nos. 16 and 17 (call records showing class members and class calls).

### 1. RFP Nos. 13 and 15 seek documents that are relevant to each Defendant's knowledge of the unlawful nature of the Subject Calls.

To determine whether each Defendant's systems "lit up" when the subject call was received (*see* Third Am. Compl. ¶ 13, ECF No. 138), and whether each Defendant knew or should have known that the call was unlawful, Plaintiff needs to understand the context in which each Defendant received and transmitted the calls, and whether it treated the calls differently than it treated other calls. RFP No. 13 seeks records showing all call traffic within 12-hour windows on either side of the calls at issue; RFP No. 15 seeks call traffic within 96 hours of the calls at issue from or to the same preceding provider. This information is relevant principally to factors No. 1 (totality of the facts and circumstances surrounding the placing of a particular call), No. 7 (whether the defendant knowingly allowed its platform to be used for unlawful purposes), No. 8 (whether the Defendant knew the calls were invalid), No. 9 (whether the Defendant turned

5

a blind eye to the calls), and No. 10 (whether the Defendant's business model depended on a high volume of invalid calls).

The relevance of these contextual call records is best shown through examples.[4] Assume the call records one of these Defendants is refusing to produce show hundreds, thousands, or millions of short-duration calls displaying other obviously spoofed caller IDs, all from the same preceding provider, at the same time they transmitted one of the subject calls to Ms. Mey. Were the calls so unusual, compared to normal call traffic, that the Defendant should have taken notice? Were any of these calls transmitted from a different preceding provider and rejected, only to be accepted once they were transmitted by the preceding provider involved here? Suppose that the prior day, the same entity that sent Defendant the subject call also sent a large batch of calls to an identical list of receiving phone numbers, using a different obviously spoofed caller ID? This would tend to show that that Defendant knew, or turned a blind eye, to the obviously spoofed calls made through its system, without regard to the fraudulent or illegal nature of the calls. This of course is highly relevant to the claims in this case.

Assume the call records show the opposite – for example, that the subject calls were one-off anomalies that slipped through their systems. This might support the Defendant's assertion that it didn't know the obviously spoofed calls were unlawful.

Either way, Plaintiff needs these other call detail records to put the subject calls in context and demonstrate what each Defendant knew or should have known about them. Without this data, Plaintiff will have no way of exploring the "totality of the facts and circumstances" that the FCC and the Court has stated determine whether Defendants may be liable for unlawful calls.

---

[4] These examples are not intended to be an exhaustive list of every scenario showing how the call detail records might uncover the Defendants' knowledge that the calls were illegal and should be blocked.

The parties already agreed that call detail records would be designated as "Highly Confidential - External Attorneys' Eyes Only" under the protective order the parties have carefully negotiated. ECF No. 248 § 2.b. The parties further agreed to additional protections for customer proprietary network information that might be disclosed by the call records. *Id.* at 9-11.

Nonetheless, each Defendant objects to producing the necessary trove of call records, contending that RFP Nos. 13 and 15 seek information that is irrelevant. *See* Addendum at iv–vi. Three of the four Defendants refuse to provide *any* of the information requested, *id.* and one agrees only to provide calls received purporting to be both from the same caller ID and from the same preceding provider. *See* **Inteliquent** Response to Request for Production Nos. 13 and 15, reprinted in Addendum at iv, vi.

### 2. RFP Nos. 16 and 17 seek information relevant to identifying class members and class calls.

Request Nos. 16 and 17 seek call records that will identify class calls and class members – highly relevant in this putative class action where discovery is not bifurcated into separate class and merits phases. There is no other way for Plaintiff to obtain this information. The objecting Defendants object on relevancy grounds but have not articulated a valid basis for their objections.

### 3. Production of the RFP Nos. 13, 15, 16, and 17 call detail records would not impose undue burden.

Responses to discovery requests will always pose a burden; the Rules permit a party to avoid responding only if the burden would be ***undue***, considering the needs of the case and availability of the information through alternative means. *See* Fed. R. Civ. P. 26(b). Here, there are no other means obtaining the information sought.

### a. *All Access's principal objection is relevance, not undue burden.*

While **All Access** objected to Request Nos. 13 and 15-17 as imposing an undue burden, it appears to rest principally on its relevance objection, addressed above. It has provided few details regarding its purported burden, although it indicated that more detail would be forthcoming.

### b. *Lumen stated no objection on any ground to RFP Nos. 16 and 17, and it has not maintained its boilerplate undue burden objections to RFP Nos. 13 and 15.*

In its responses to RFP Nos. 16 and 17, **Lumen** stated, "**Lumen** will produce responsive, non-privileged documents within its possession, custody, or control that can be located upon a reasonable and diligent search." It did not object on any ground. Its counsel has continued to provide information relating to the production of this information, and Plaintiff hopes to receive full responses soon, but nonetheless, is filing this motion to compel complete responses in accordance with the parties' stipulated deadline should the negotiations fail.

To the extent it claims undue burden as to RFP Nos. 13 and 15, **Lumen** lodged boilerplate objections, *see Smith v. Bayer Material Sci., LLC*, No. 5:12-CV-171, 2013 WL 3153467, at *1 (N.D.W. Va. June 19, 2013) ("generalized, boilerplate objections that regurgitate the language from Rule 26 – irrelevant, overly broad, and unduly burdensome – are highly disfavored and will usually result in a waiver of the objection."), but has provided little detail beyond an assertion that production of the records would be "formidable." Letter from Russ Jones to Plaintiff's counsel, December 15, 2021, at 2, attached as Exhibit 1. As with RFP Nos. 13 and 15, Plaintiff is filing this motion to comply with the deadline and will continue to negotiate acceptable responses.

### c. *Inteliquent's undue burden objections lack merit.*

As discussed above, the requested call detail records are necessary to identify class members and class calls (RFP Nos. 16 and 17), and to determine whether **Inteliquent** knew or

should have known the calls were illegal (RFP Nos. 13 and 15). There are no other means by which Plaintiff can retrieve the information necessary for her claims. Nonetheless, **Inteliquent** claims it should not have to produce these records because doing so would impose undue burden. Its claim is without merit.

The only things **Inteliquent** must do are: (1) identify the backup tapes that contain the CDRs, (2) give its vendor permission to release those tapes to a third party, and (3) either instruct a third party to process the tapes and search for the requested CDRs, confidentially and under the terms of the existing protective order, or perform the restoration and search processes itself, a task **Inteliquent** boasts it is "uniquely position[ed] to design and implement." *See infra* at p. 10; *see also* Decl. of J. Hansen, Jan. 18, 2022, ¶ 27, attached as Exhibit 2.

Instead, **Inteliquent** tries to manufacture an undue burden. By its telling, 

Letter from Natalie Georges to John Barrett, Dec. 14, 2021, at 2, attached as Exhibit 3.

But the roadblocks **Inteliquent** throws are unnecessary. It could reduce the time and effort required by having a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiff proposed this (*see* email from Y. Golan to N. Georges, Dec. 23, 2021, attached as Exhibit 4), but **Inteliquent** refused, referencing "challenges and risks that **Inteliquent** objects to" (*see* email from N. Georges to Y. Golan, Jan. 4, 2022, attached as Exhibit 5), and lamenting that it is "not comfortable" with entrusting sensitive data to a third party (*see* email from N. Georges to

Plaintiff's counsel, Jan. 13, 2022, attached as Exhibit 6), despite the existence of the robust

protective order that **Inteliquent** negotiated.

Nor do **Inteliquent's** claims of ███████████" pass muster. Considering the format of its

████████████████████████████████████████████

██████████████████████████ Hansen Decl. ¶ 17. ██████████████████

████████████████████████████████████████████

███████████████████████████████████████. ¶ 18. ████████

██████████████████████████████████████████

████████████████████████. *See* Exhibit 5.██████████████████

███████████████████████████" *see* Exhibit 3 at 2, but that exaggerates the

mundane task actually required: performing a search. Hansen Decl. ¶ 24.

In fact, as **Inteliquent** boasts:

.

Exhibit 5.

Plaintiff also suggested a third party could search the CDR data. Exhibit 4. **Inteliquent**

refused, insisting that ██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████ *See*

Exhibit 5.  What information would need to be extracted, other than the internal identifier (*e.g.*,

client code) used to identify All Access? What would be required to gain access? Plaintiff asked

(*see* email from Y. Golan to N. Georges, Jan. 7, 2022, attached as Exhibit 7), but **Inteliquent**

refused to say. *See* Exhibit 6.

If **Inteliquent** continues to insist that ████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ it should not be allowed to complain that it must

take its personnel away from their regular jobs.

Plaintiff is not insensitive to the fact that responding to discovery takes time and effort,

but that is true for all discovery requests from any party. There is no other way to obtain the data

this lawsuit requires, and **Inteliquent** has not shown that the burden actually *required* would be

*undue*. Plaintiff respectfully requests this Court order **Inteliquent** to produce the CDRs

responsive to Request Nos. 13, 15, 16, and 17.

### d. *Bandwidth's undue burden objections lack merit.*

Like **Inteliquent**, **Bandwidth** claims producing the requested call records would impose

an undue burden. To understand **Bandwidth's** objection, and to determine if a third party could

alleviate the burden, on December 2, 2021, Plaintiff asked **Bandwidth** thirteen questions

regarding the formats of its call detail records and backups. Letter from J. Barrett to **Bandwidth**

Counsel, Dec. 2, 2021, at 2, attached as Exhibit 8.

**Bandwidth** responded with a vague one-paragraph narrative that it refused to clarify. L.

Edwards email Jan. 13, 2022 (attached as Exhibit 9); J. Barrett email Jan. 12, 2022 (attached as

Exhibit 10). Importantly, the narrative is devoid of any statement as to the time, resources, and

technical competence needed to obtain, access, and search the requested records.

Indeed, **Bandwidth's** system appears to be straightforward. ████████████████

████████████████████████████████████████████████████████

*See* Exhibit 9. ██████████████████████████████████████████

██████████████████████ *Id.* █████████████████████████████████

11

███████████████████████████████████████ *Id.* Though Plaintiff asked, it refused to state what format these records are in, (*see id.*; Exhibit 10) which would bear upon whether the files can be combined and searched more efficiently.

In short, **Bandwidth** provides a vague description of how it would respond to the requests but provides no basis for asserting that the burden would be *undue*.

## V.    Certification

Under Local Rule of Civil Procedure 26.01(d), I certify that I have made a reasonable and good-faith effort to reach agreement with counsel on the matters in dispute.

## VI.   Conclusion

For the foregoing reasons, Plaintiff respectfully requests this Court grant her motion, and order the relief sought in Part II above.

Dated: January 18, 2022                    Respectfully submitted,

                                            */s/ John W. Barrett*
                                           John W. Barrett (WV Bar No. 7289)
                                           Jonathan R. Marshall (WV Bar No. 10580)
                                           Benjamin J. Hogan (WV Bar No. 12997)
                                           BAILEY & GLASSER LLP
                                           209 Capitol Street
                                           Charleston, WV 25301
                                           Telephone: 304-345-6555
                                           Facsimile:  304-342-1110
                                           JBarrett@baileyglasser.com
                                           JMarshall@baileyglasser.com
                                           BHogan@baileyglasser.com

                                           William Howard (admitted *pro hac vice*)
                                           THE CONSUMER PROTECTION FIRM
                                           401 East Jackson Street, Suite 2340
                                           SunTrust Financial Center
                                           Tampa, FL 33602
                                           Telephone: 813-500-1500

Facsimile: 813-435-2369
Billy@TheConsumerProtectionFirm.com

Yvette Golan (admitted *pro hac vice*)
THE GOLAN FIRM
529 14th Street, NW, Suite 914
Washington, DC 200
Telephone: 866-298-4150 ext. 101
Facsimile: 928-441-8250
YGolan@tgfirm.com

*Counsel for Plaintiffs*

**ADDENDUM**

**A.  Requests Regarding Complaints and Traceback Requests – RFP Nos. 27-28**

**Plaintiff's Request for Production No. 27.  Please produce all complaints and inquiries (whether relating to litigation, or informal complaints) from consumers, government entities, or advocacy groups Concerning or relating to spoofed calls, calls with invalid Caller ID, calls potentially violating the TCPA, or calls associated with any entity Identified in response to Interrogatory Nos. 4 and 6.**

**ALL ACCESS ANSWER TO RFP No. 27**:  All Access Telecom objects to this request to the extent it seeks information about calls unrelated to the Subject Calls at issue in the case. Such information is irrelevant to any claim or defense in this matter, overly broad, unduly burdensome, and not proportional to the needs of the case. The request is facially overbroad because it seeks "all documents" concerning or relating to a broad category of information with insufficient limitations in time and scope. *See Adams*, 2007 WL 9729119, at *6; *Regan-Touhy,* 526 F.3d at 649-650; *Martinez,* 2019 U.S. Dist. LEXIS 187019, at *16-17. Additionally, such information is irrelevant to any claim or defense in this matter, overly broad, unduly burdensome, and not proportional to the needs of the case. All Access Telecom also objects to this request because it seeks confidential and proprietary information, and the parties have not yet agreed on an appropriate protective order to govern this action going forward.

      With respect to the non-objectionable parts of the request, All Access Telecom indicates that it previously produced materials which may be responsive to this request in response to the subpoenas from Plaintiff served on All Access Telecom in 2020.

**BANDWIDTH ANSWER TO RFP No. 27**:  Bandwidth objects to this request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, and/or work product doctrine. Bandwidth also objects to this request to the extent it seeks information about actions unrelated to the Subject Calls at issue in the case. Such information is irrelevant to any claim or defense in this matter, overly broad, unduly burdensome, and not proportional to the needs of the case. The request is facially overbroad because it seeks "all documents" concerning or relating to a broad category of information with insufficient limitations in time and scope. *See Adams*, 2007 WL 9729119, at *6. Additionally, such information is irrelevant to any claim or defense in this matter, overly broad, unduly burdensome, and not proportional to the needs of the case. Finally, Bandwidth objects to this request because it seeks confidential and proprietary information, and no protective order is yet in place. Bandwidth also objects to this request because it seeks confidential and proprietary information, and no protective order is yet in place.

Subject to and without waiving this objection, following entry of a mutually acceptable protective order, Bandwidth will produce responsive, non-privileged documents within its possession, custody, or control that can be located upon its initial reasonable and diligent search reflecting complaints or inquiries for the Subject Calls.

**INTELIQUENT ANSWER TO RFP No. 27**:  Defendant Inteliquent objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence as it relates to the allegations against Inteliquent. As to Inteliquent, Plaintiff's allegations relate solely to the transmission of all-zero calls and Subject Calls One, Two, Three and Ten. Subject to and without waiving the foregoing general and specific objections, and following entry of a mutually acceptable protective order and ESI Protocol, Defendant Inteliquent will produce responsive documents, as they relate to all-zero calls, located following the identification of a set of agreed-upon search terms to be applied to the custodial data of relevant and agreed to Inteliquent employees.

**LUMEN ANSWER TO RFP No. 27**:  Lumen objects to this request because it seeks documents protected by attorney-client privilege and the work product doctrine. Lumen also objects to this request because it is overly broad, unduly burdensome, fails to describe with reasonable particularity the information sought as required by Fed. R. Civ. P. 34(b)(1)(A), and is not reasonably calculated to lead to the discovery of admissible evidence. The request is facially overbroad because it seeks "all documents" concerning or relating to a broad category of information with insufficient limitations in time and scope. *See Adams v. Rush Trucking Corp.,* No. 3:06-CV-65, 2007 WL 9729119, at *6 (N.D.W. Va. Jan. 8, 2007); *Twigg v. Pilgrim's Pride Corp.,* No. 3:05-CV-40, 2007 WL 676208, at *9 (N.D.W. Va. Mar. 1, 2007). Notwithstanding and without waiving these objections, Lumen will produce responsive, non-privileged documents within its possession, custody, or control that can be located upon a reasonable and diligent search reflecting complaints or inquiries for the ANI of 4854215423 or the Subject Calls.

\* \* \* \* \*

**Plaintiff's Request for Production No. 28.  Please produce all Documents Concerning traceback requests from consumers, government entities, or advocacy groups.**

**ALL ACCESS ANSWER TO RFP No. 28**:  All Access Telecom objects to this request to the extent it seeks information about calls unrelated to the Subject Calls at issue in the case. Such information is irrelevant to any claim or defense in this

matter, overly broad, unduly burdensome, and not proportional to the needs of the case. All Access Telecom also objects to this request because it seeks confidential and proprietary information, and the parties have not yet agreed on an appropriate protective order to govern this action going forward.

With respect to the non-objectionable parts of the request, All Access Telecom indicates that it previously produced materials which may be responsive to this request in response to the subpoenas from Plaintiff served on All Access Telecom in 2020.

**BANDWIDTH ANSWER TO RFP No. 28**: Bandwidth objects to this request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, and/or work product doctrine. Additionally, Bandwidth objects to this request to the extent it seeks information about actions unrelated to the Subject Calls at issue in the case. Such information is irrelevant to any claim or defense in this matter, overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving this objection, upon its initial reasonable and diligent search, Bandwidth has identified no information regarding traceback requests for the Subject Calls.

**INTELIQUENT ANSWER TO RFP No. 28**: Defendant Inteliquent objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence as it relates to the allegations against Inteliquent. As to Inteliquent, Plaintiff's allegations relate solely to the transmission of all-zero calls and Subject Calls One, Two, Three and Ten. Subject to and without waiving the foregoing general and specific objections, and following entry of a mutually acceptable protective order, Defendant Inteliquent will produce documents concerning traceback requests related to calls received from All Access, to the extent they exist based upon Inteliquent's reasonable search.

**LUMEN ANSWER TO RFP No. 28**: Lumen objects to this request because it seeks documents protected by attorney-client privilege and the work product doctrine. Lumen also objects to this request because it is overly broad, unduly burdensome, fails to describe with reasonable particularity the information sought as required by Fed. R. Civ. P. 34(b)(1)(A), and is not reasonably calculated to lead to the discovery of admissible evidence. The request is facially overbroad because it seeks "all documents" concerning or relating to a broad category of information with insufficient limitations in time and scope. *See Adams v. Rush Trucking Corp.,* No. 3:06-CV-65, 2007 WL 9729119, at *6 (N.D.W. Va. Jan. 8, 2007); *Twigg v. Pilgrim's Pride Corp.,* No. 3:05-CV-40, 2007 WL 676208, at *9 (N.D.W. Va. Mar. 1, 2007). Notwithstanding and without waiving these objections, Lumen will produce responsive, non-privileged documents within its possession, custody, or control that can be located upon a reasonable and diligent

search reflecting traceback requests for the ANI of 4854215423 or the Subject Calls.

**B.  Call records in proximity to the calls at issue – RFP Nos. 13, 15**

**Plaintiff's Request for Production No. 13. Please produce Call Detail Records for all calls You transmitted or received within 12 hours before and 12 hours after each Subject Call(s), regardless of the call duration and regardless of whether the call was completed.**

**ALL ACCESS ANSWER TO RFP NO. 13**: All Access Telecom objects to this request on the basis that the information sought is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, there are potentially millions of calls which would be responsive to this request, most or all of which are not at issue in this litigation under any definition. As such, the request is facially overbroad because it seeks all call records without limitation in scope and with insufficient limitation in time. All Access Telecom objects to this request to the extent it seeks information about calls unrelated to the issues in this case. All Access Telecom also objects to this request because it seeks confidential and proprietary information, and the parties have not yet agreed on an appropriate protective order to govern this action going forward.

**BANDWIDTH ANSWER TO RFP NO. 13:**  Bandwidth objects to this request on the basis that the information sought is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, there are potentially millions of calls which would be responsive to this request. The request is facially overbroad because it seeks all call records without limitation in scope and with insufficient limitation in time. *See Adams*, 2007 WL 9729119, at *6. Additionally, Bandwidth objects to this request to the extent it seeks information about calls unrelated to the issues in this case. Bandwidth also objects to this request because it seeks confidential and proprietary information, and no protective order is yet in place.

**INTELIQUENT ANSWER TO RFP NO. 13:**  Defendant Inteliquent objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence as it relates to the allegations against Inteliquent. As to Inteliquent, Plaintiff's allegations relate solely to the transmission of all-zero calls and Subject Calls One, Two, Three and Ten. Subject to and without waiving the foregoing general and specific objections, and following entry of a mutually acceptable protective order, Defendant Inteliquent responds that, subject to agreement with Plaintiff's counsel, it is willing to produce Call Detail Records for all all-zero calls received from All Access from January 1, 2018 to January 15, 2018, as well as May 24, 2018 to May 31, 2018. Defendant Inteliquent will also produce total minutes of use for all call traffic from All Access during the same time frame.

iv

**LUMEN ANSWER TO RFP NO. 13:**  Lumen objects to this request because it is overly broad, unduly burdensome, fails to describe with reasonable particularity the information sought as required by Fed. R. Civ. P. 34(b)(1)(A), and is not reasonably calculated to lead to admissible evidence. The request is facially overbroad because it seeks all call records without limitation in scope and insufficient limitation in time. *See Adams v. Rush Trucking Corp.,* No. 3:06-CV-65, 2007 WL 9729119, at *6 (N.D.W. Va. Jan. 8, 2007); *Twigg v. Pilgrim's Pride Corp.,* No. 3:05-CV-40, 2007 WL 676208, at *9 (N.D.W. Va. Mar. 1, 2007). Lumen estimates that it transmits in excess of 200 million calls per day, and the request, as written, seeks records on an estimated 1.2 billion call records, regardless of their relevance to this case, so the request as written would require Lumen to produce in excess of 1.2 billion call records regardless of their relevance to this case. Lumen also objects to this request because it seeks confidential and proprietary information of third-party individuals that are not relevant to this case.


\* \* \* \* \*


**Request for Production No. 15. Please produce Call Detail Records Concerning all calls that you received from or transmitted to each entity Identified in response to Interrogatories Nos. 4 or 6, 96 hours before and 96 hours after each Subject Call(s), regardless of the call duration and regardless of whether the call was completed.**

**ALL ACCESS ANSWER TO RFP NO. 15**: All Access Telecom objects to this request on the basis that the information sought is irrelevant, vague, overly broad, unduly burdensome, and not proportional to the needs of the case. The request is facially overbroad because it seeks eight days of call records involving certain entities with insufficient limitations in time and scope. Additionally, All Access Telecom objects to this request to the extent it seeks information about calls unrelated to the Subject Calls at issue in the case.

**BANDWIDTH ANSWER TO RFP NO. 15:**  Bandwidth objects to this request on the basis that the information sought is irrelevant, vague, overly broad, unduly burdensome, and not proportional to the needs of the case. The request is facially overbroad because it seeks eight days of call records involving certain entities with insufficient limitations in time and scope. Additionally, Bandwidth objects to this request to the extent it seeks information about actions unrelated to the Subject Calls at issue in the case. This request does nothing to advance the claims in this case and may potentially encompass a wide swath of irrelevant information.

**INTELIQUENT ANSWER TO RFP NO. 15:**  Defendant Inteliquent objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence as it relates to the allegations against Inteliquent. As to Inteliquent, Plaintiff's allegations relate solely to the transmission of all-zero calls and Subject Calls One, Two, Three and Ten. Subject to and without waiving the foregoing general and specific objections, and following entry of a mutually acceptable protective order, Defendant Inteliquent responds that, subject to agreement with Plaintiff's counsel, it is willing to produce Call Detail Records for all all-zero calls received from All Access from January 1, 2018 to January 15, 2018, as well as May 24, 2018 to May 31, 2018. Defendant Inteliquent will also produce total minutes of use for all call traffic transmitted from All Access during the same time frame.

**LUMEN ANSWER TO RFP NO. 15:**  Lumen objects to this request because it is overly broad, unduly burdensome, fails to describe with reasonable particularity the information sought as required by Fed. R. Civ. P. 34(b)(1)(A), and is not reasonably calculated to lead to admissible evidence. The request is facially overbroad because it seeks forty-eight days of call records involving certain entities with insufficient limitations in time and scope. *See Adams v. Rush Trucking Corp.,* No. 3:06-CV-65, 2007 WL 9729119, at *6 (N.D.W. Va. Jan. 8, 2007); *Twigg v. Pilgrim's Pride Corp.,* No. 3:05-CV-40, 2007 WL 676208, at *9 (N.D.W. Va. Mar. 1, 2007). Lumen estimates that it transmits in excess of two hundred million calls per day, so the request as written would require Lumen to produce approximately a disproportionately large set of call records regardless of their relevance to this case. Lumen also objects to this request because it seeks confidential and proprietary information of third-party individuals that are not relevant to this case.

**C.  Call records necessary to identify class calls and class members – RFP Nos. 16 & 17.**

**Request for Production No. 16. Please produce Call Detail Records Concerning all calls purporting to be from the ANI or IP Address of the Subject Call(s) during the class period, regardless of the call duration and regardless of whether the call was completed.**

**ALL ACCESS ANSWER TO RFP NO. 16**: All Access Telecom objects to this request on the basis that the information sought is irrelevant, vague, overly broad, unduly burdensome, and not proportional to the needs of the case. All Access Telecom objects to this request to the extent it seeks information about calls unrelated to the issues in this case. All Access Telecom also objects to this request because it seeks confidential and proprietary information, and the parties have not yet agreed on an appropriate protective order to govern this action going forward.

**BANDWIDTH ANSWER TO RFP NO. 16:**  Bandwidth objects to this request on the basis that the information sought is irrelevant, vague, overly broad, unduly burdensome, and not proportional to the needs of the case.

**INTELIQUENT ANSWER TO RFP NO. 16:**  Defendant Inteliquent objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence as it relates to the allegations against Inteliquent. Further, Defendant Inteliquent objects to this Request as it references "the class period"; in accordance with Inteliquent's General Objections, it objects to the use of this time period as overbroad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, Defendant Inteliquent responds that it does not know the identity of the entity that originated the Subject Calls. Further, pursuant to RFP No. 10, Defendant Inteliquent will produce all documents in its possession, custody or control with information relating to Subject Calls One, Two, Three and Ten.

**LUMEN ANSWER TO RFP NO. 16:**  Lumen will produce responsive, non-privileged documents within its possession, custody, or control that can be located upon a reasonable and diligent search.

* * * * *

**Request for Production No. 17. Please produce Call Detail Records Concerning all calls purporting to be from the Caller ID of the Subject Call(s) during the class period, regardless of the call duration and regardless of whether the call was completed.**

**ALL ACCESS ANSWER TO RFP NO. 17**: All Access Telecom objects to this request on the basis that the information sought is irrelevant, vague, overly broad, unduly burdensome, and not proportional to the needs of the case. Additionally, All Access Telecom objects to this request because it is potentially vague and ambiguous because "Caller ID" is undefined and the documents previously produced by All Access Telecom included a "callerid" field containing different information.

All Access Telecom is willing to meet and confer regarding appropriate parameters for this request. Plaintiff may provide clarification regarding the information requested and to the extent Plaintiff seeks properly discoverable information and an appropriate protective order is entered, All Access Telecom will supplement its response accordingly.

**BANDWIDTH ANSWER TO RFP NO. 17:**  Bandwidth objects to this request on the basis that the information sought is irrelevant, vague, overly broad, unduly burdensome, and not proportional to the needs of the case.

**INTELIQUENT ANSWER TO RFP NO. 17:**  Defendant Inteliquent objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence as it relates to the allegations against Inteliquent. Further, Defendant Inteliquent objects to this Request as it references "the class period"; in accordance with Inteliquent's General Objections, it objects to the use of this time period as overbroad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, Defendant Inteliquent does not know the identity of the originator of Subject Calls One, Two, Three, and Ten.

**LUMEN ANSWER TO RFP NO. 17:**  Lumen will produce responsive, non-privileged documents within its possession, custody, or control that can be located upon a reasonable and diligent search.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINA**

**Wheeling Division**

**DIANA MEY, individually and
on behalf of a proposed class,**

     **Plaintiff,**

**v.**                                  **Civil Action No. 5:19-cv-00237-JPB**

**ALL ACCESS TELECOM, INC.;
BANDWIDTH INC.;
CENTURYLINK COMMUNICATIONS, LLC;
LEVEL 3 COMMUNICATIONS, LLC;
INTELIQUENT, INC.;
AFFINITY NETWORK INCORPORATED; and
TELIAX, INC.,**

     **Defendants.**

**<u>CERTIFICATE OF SERVICE</u>**

     I, John W. Barrett, hereby certify that on January 18, 2022, a true and correct copy of

**PLAINTIFF'S CONSOLIDATED MOTION TO COMPEL DISCOVERY FROM**

**DEFENDANTS ALL ACCESS, BANDWIDTH, INTELIQUENT, AND LUMEN** was filed

using CM/ECF, the Court's electronic notification system, which provided notice to all counsel

of record.

                                                     <u>/s/ John W. Barrett</u>
                                                     John W. Barrett (WV Bar No. 7289)