IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

WHEELING DIVISION

**DIANA MEY, individually
and on behalf of a proposed class,**

    **Plaintiff,**

v.                                                                    Civil Action No. 5:19-cv-00237-JPB

**ALL ACCESS TELECOM, INC., et al.**

    **Defendants.**

**Plaintiff's Reply in Support of her Limited Objections to the Magistrate's Orders Granting the Motions to Compel of Defendants Lumen and Inteliquent**

    As the saying goes, when the facts are on your side, pound the facts. When the law is on your side, pound the law. And when neither is on your side, pound the table. That, and attack the Plaintiff. That is what Lumen and Inteliquent are doing here: launching baseless personal attacks on Ms. Mey and weaponizing discovery by burying Plaintiff in mountains of irrelevant documents to locate and produce. The Defendants also want Ms. Mey's entire phone record, which would reveal the phone numbers of her and her family's personal contacts. Requiring Ms. Mey to produce these invasive, voluminous, and over-inclusive records and documents would deter her and others who step forward to enforce the TCPA by "[bringing] suits both to enjoin intrusive practices and deter future violations through money damages" in service of "an intent by Congress to allow consumers to bring their [TCPA] claims at modest personal expense." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019).

    As the Court of Appeals held, "It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest [via the TCPA]" with rulings "that ignored the purpose, text, and structure of this [simple and administrable] Act at the behest of

1

those whose abusive practices the legislative branch had meant to curb." *Id.* And that is what is at stake here. The Magistrate's orders (ECF 387 and 391) did not consider the burdens of producing the compelled materials, nor the relevance of the documents sought, nor whether the requests were proportional to the needs of the case. Plaintiff objects only to the most sweeping aspects of the Orders as an abuse of discretion and clear error, and respectfully asks this Court to roll back those aspects by issuing a reasonable and proportionate ruling on discovery.

I.   **Plaintiff's Objections Comply with Rule 72.**

Rule 72 does not bar Plaintiff from raising its current limited objections. Defendants' selective quoting of *Tenney v. Saul* does not change that. There the Court found that "[g]eneral objections to the magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Fed. R. Civ. P. 72, and have the same effect as a failure to object." No. 5:20-CV-202, 2021 WL 5868138, at *2 (N.D. W. Va. Dec. 10, 2021) (citing *Veney v. Astrue*, 539 F.Supp.2d 841, 845 (W.D. Va. 2008)).

The court in *Veney* did not hold that parties must come up with new and different reasons when objecting to magistrate decisions; the court was concerned that parties would make blanket, generalized objections, without specificity, that would waste the court's time and eliminate the efficiencies of magistrate referrals. *Id.* at 845. It would make no sense for an objecting party to be foreclosed from arguing to the district court what it had previously argued to the magistrate. The objections comply with Rule 72.

II.  **The Magistrate's findings that the objections were boilerplate did not account for Plaintiff's efforts in clarifying their objections and producing documents.**

The Magistrate's decision to overrule Plaintiff's objections because they were boilerplate was an incomplete analysis and an erroneous application of law. The Magistrate's Orders did not

account for Plaintiff's substantial efforts to clarify objections after serving the initial responses. Rule 26 requires parties to supplement or correct a response if material information is incomplete or incorrect "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26. Between Plaintiff's initial response and the hearing, Plaintiff met and conferred, exchanged numerous emails discussing the discovery responses, supplemented her responses, or produced documents at least every other week. Unfortunately, these efforts are not reflected in the Orders.

      Instead, the Magistrate looked at the literal words on the interrogatory and request for production of documents responses written at the outset of the discovery response period, while ignoring the substantial work that occurred after those initial responses. Boilerplate language is generally disfavored in the Fourth Circuit because it does not provide enough specificity to assist the court and parties on the merits of that objection. *See Hager v. Graham*, 267 F.R.D. 486, 492 (N.D.W. Va. 2010). A court will deem a party's objections waived when it stonewalled discovery and provided no additional information beyond the initial response. For instance, in *Anderson*, the Court rejected the party's objections to production because the litigant "has not made any attempt to describe how these requests are 'vague'… [or] demonstrate that the disputed requests are unduly burdensome." *Anderson v. Consolidation Coal Co.*, No. 1:11-cv-138, 2014 WL 1663366, at *3 (N.D.W. Va. Apr. 23, 2014). By contrast, Plaintiff clearly articulated the reasons for her objections to the parties (during meet and confers), in briefs, and

hearing. The Magistrate should have drawn reasonable limitations on discovery, not merely determined which potential documents may satisfy the wording of a request.[1]

### III. The Magistrate abused discretion and committed clear error in making no relevancy or proportionality findings.

The district court must consider and set aside any part of the Magistrate's Order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a). The Orders were clearly erroneous because they applied no limitations to the Defendants' discovery requests as required under Rule 26(b)(1), which cabins the "scope and limits" of discovery to relevant, nonprivileged matters that are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

This Court has observed that unwanted calls cause monetary and intangible harms to the public *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 777 (N.D.W. Va. 2017) (identifying the harms as "(1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction."). Ms. Mey's action serves the congressional intent to "vindicate the public interest" by enforcing the "simple and administrable" provisions of the

---

[1] The Magistrate also comments that Plaintiff's lack of a privilege log was reason in support of overruling Plaintiff's objections. ECF 387 at 5. As it is early in discovery and documents have not been fully reviewed or the scope of production settled, the creation of a privilege log before there is agreement on the scope of the types of documents to be produced is premature, and indeed the Court's ESI protocol contemplates a process for issuing logs in reviewing ESI productions.

4

TCPA, provisions that are "conducive to class-wide disposition." *Krakauer,* 925 F.3d at 656, 663.

The Magistrate's Orders, if affirmed, will have a profound impact on Ms. Mey and class action representatives like her who work to fulfill this congressional intent. Producing the compelled materials — including every document that she has ever produced or received, across all of her cases since 2010 — will be time-consuming, expensive, and likely to generate spinoff litigation through disputes with parties whose confidential materials are at stake. Judging by Lumen's recent subpoena of a former co-defendant for call records, sensitive corporate financial information, and confidential settlement materials, Lumen appears highly motivated to escalate disputes. As the subpoena recipient's attorney responded, "We are at a loss as to what [Lumen] hope[s] to accomplish here, or why [Lumen] believe(s) that it is entitled to drag a non-party through extensive, burdensome, and irrelevant third-party discovery given all the issues noted above." Ex. 1.

There is no reason to subject consumers willing to step forward to the enormous and unnecessarily invasive burdens of responding to irrelevant discovery requests.

> **A. The orders to produce all TCPA case materials were abuse of discretion and clear error because they are irrelevant and the order is oppressively burdensome— Lumen RFP 15, Inteliquent RFP 17, 18, Lumen Interrogatory No. 2 and RFP 18.**

Lumen's RFP 15 sought "copies of all legal actions, and *all documents relating thereto*, you filed or in which you were named as a party, since 2010." ECF 387 at 7. Inteliquent similarly sought "All Documents concerning your involvement in any other lawsuit," but limited its request to the class period, from August of 2015 onward. ECF 391 at 3. Lumen's Interrogatory No. 2 and RFP 18 are even broader than RFP 15, seeking "[a]ll documents

5

reflecting any actions you have taken regarding the receipt of spoofed calls or robocalls," which the Magistrate and Lumen have interpreted to include the TCPA case materials sought in RFP 15. *See* ECF 387 at 8 ("To the extent this request seeks copies of Court records, Plaintiff makes no mention of the same."). These requests are absurdly broad.

      The Magistrate acknowledged that in response to this request, Ms. Mey provided a list of her TCPA cases since 2010 and directed Defendants to access publicly available documents on PACER. *Id.* Despite the vast amount of information provided by Plaintiff and available to the Defendants, the Magistrate required Plaintiff to produce more documents, including "Plaintiff's answers to discovery and deposition testimony, *and the like*," imposing a limitless obligation on Plaintiff that involves dozens of cases with various lawyers and varying confidentiality obligations. ECF 387 at 8 (emphasis added); ECF 391 at 4 (directing Plaintiff to supplement her response, which "**SHOULD INCLUDE (but should not be limited to) the aforementioned case materials.**" (emphasis in original). Despite Plaintiff's objections, the Magistrate did not address why those documents are pertinent to this case. Nor did the Magistrate address burden. The Rules limit the scope of discovery to documents that are relevant and proportional. Fed. R. Civ. P. 26(b)(1). The orders' failure to set limitations on discovery was clear error.

      The claims and defenses in this case focus on *Defendants'* actions, not Plaintiff's. This case is about "enforcing the TCPA against those who make and profit from obviously spoofed robocalls … by 'being so involved in the placing of a specific telephone call as to deemed to have initiated it.'" ECF 220 at 1-2. As Plaintiff alleges, the calls that the Defendants made are from "invalid numbers which the defendants know are unlawful and could easily stop." *Id.* at 2. What Plaintiff has done in previous cases alleging different claims, different facts, and different

6

defendants have no bearing on the Defendants' involvement in making obviously-spoofed robocalls to Ms. Mey and others in the class.

The Defendants claim their requests will show Ms. Mey's "efforts to limit robocalls, her motivations for filing so many TCPA suits, her history of phone numbers and devices, and her communications with others." ECF 422 at 10; ECF 431 at 6-7. To which claims and what issues are these matters relevant? The Defendants do not say, nor do the Orders.

And even if they were relevant, that relevance would be disproportionate to the needs of the case and the burden on Plaintiff to gather and produce the voluminous materials that might satisfy the ill-defined and limitless obligation under the Magistrate's Order. First, the twelve-year time period is too expansive. *See* West Virginia L.E.I 2002-01, Retention and Destruction of Closed Client Files (advising a five-year document retention policy for closed cases).

Second, Ms. Mey has counsel in other cases that Bailey & Glasser is not involved in. The Orders appears to require Ms. Mey to seek materials from other counsel if she does not have them in her possession. Her other counsel are likely to have similar document retrieval and retention burdens given the Magistrate's endorsement of Defendants' expansive request.

Third, the volume of documents sought is tremendous. Lumen's "compromise," which Plaintiff first learned about in reading Lumen's brief, proposes that Plaintiff produce "deposition testimony/exhibits, discovery requests and responses, *documents produced* and expert reports." ECF 422 at 13 (emphasis added). That is no compromise and does not mitigate the overwhelming burden. *See* ECF 415 at 11-12. As Lumen points out, Ms. Mey has engaged in

approximately fifty or more consumer protection cases.[2] The collection, review, and production of documents within each category would be oppressively expensive and burdensome. There could be several depositions in each case, each with numerous exhibits. The *Monitronics* MDL *alone* is sprawling, as MDLs are. The deponents would include Ms. Mey, other plaintiffs in a class action TCPA suit, the company or companies being sued, and non-parties. Under the Magistrate's limitless Orders, Ms. Mey would be required to ensure that all depositions in each case were located and produced. This would be a labor-intensive task of hunting down, collecting, reviewing, and ultimately producing these transcripts and their exhibits. She would also be required to pay for transcripts not ordered prior.

Further, requiring Plaintiff to provide documents produced in all TCPA litigations across twelve-years, is patently absurd. Each case could easily have hundreds of thousands of pages. Document collection process is expensive, with monthly fees in the thousands of dollars associated with simply storing large amounts of data. To ask Ms. Mey to gather and host all of this data on her vendor's server and pay for the production of all of these documents would be prohibitively expensive. Then, there is reviewing each document for responsiveness, privilege, and compliance with various confidentiality orders. Similarly, expert reports are notoriously lengthy and append many even lengthier exhibits, such as call records.

Fourth, where confidential documents are at stake, non-parties would have to get involved to assert their rights in maintaining confidentiality. This would open a Pandora's box,

---

[2] Lumen's attack on Ms. Mey's initial estimation of 25-50 TCPA cases is one of their many attempts to manufacture a dispute. ECF 422 at 2. She provided this estimation without undergoing the burden of conducting an extensive review to determine the exact number of cases that she has been involved in. Since then, she has provided a list of those cases, which is a much more definitive number.

with high potential for spinoff litigation and the need to devote enormous time and resources — all in service of producing documents that no court has held are relevant or proportional to the needs of the case.

There are less burdensome options available, and Plaintiff has consistently proposed them. The Defendants admit that they already have access to many of the records they seek and can get voluminous information from PACER. Defendants can also look at Ms. Mey's website, https://dianamey.com, where she very publicly and without apology shares information about the TCPA and her TCPA litigation. Ms. Mey has also produced publicly available comments that she has provided to the FCC.

### B. Ordering Ms. Mey to produce documents related to all actions she has taken to stop unwanted calls is over broad— Lumen Interrogatory 2 and RFP 18

Lumen's Interrogatory 2 and RFP 18 request identification and production of documents reflecting all actions Ms. Mey has taken to "prevent, block, divert, reduce, or eliminate" not just calls, but "text messages, faxes, emails, or other communications." ECF 387 at 5. Lumen includes, but does not limit, the actions it seeks from Plaintiff to include "formal or informal complaints." ECF 387 at 5, 8. Plaintiff does not object to producing documents related to Ms. Mey's actions in this case in accordance with the ESI Protocol. However, Plaintiff objects to the broad and limitless scope of the Orders that includes any time she has ever complained about spoof or robocalls with anyone, and for her to account for any action she has taken to prevent, block, divert, reduce, or eliminate calls, text messages, faxes, emails, and any other means that Ms. Mey uses to communicate.

In its opposition, Lumen claims this "information is directly relevant to Plaintiff's theory of the case here: that she could not keep spoofers from calling her, so it was Lumen's

responsibility as an intermediate carrier to do so." ECF 422 at 12. Not surprisingly, Lumen cites no aspect of the complaint in its description of Plaintiff's "theory"; it has concocted it out of whole cloth. Plaintiff's theory is that the Defendants should be held accountable for their role in making unlawful calls. "[T]he 2015 FCC Order… makes one thing clear: a provider of auto-dialing services cannot blithely sit back and blame his customers for any TCPA violations that result from their use of his service." ECF 220 at 7 (cited authority omitted).

To obscure the irrelevant nature of these requests, Lumen poses a series of improbable scenarios, all of which (Lumen says) go to the question, "Does Plaintiff really complain about Lumen[?]" As the Court and Lumen know, Plaintiff only learned of Lumen's involvement in these calls by undertaking an unprecedented, yearlong subpoena effort. In other cases filed against telemarketers and robodialers, how would she even know who the intermediate providers that profit from their roles in making obviously-spoofed robocalls are? And how does who she complains about pertain to any claim or defense? Why would the astonishingly broad question seeking "all actions you have taken to block, divert, reduce, or eliminate" the listed forms of communication (emails, faxes, other communications, etc.) relate to this case? It doesn't.

Nor does what Plaintiff "thinks" about the role of her own carrier and an unrelated vendor matter. This is not an action against either entity. And unfortunately, despite a proper relevance objection and clearly argued grounds, ECF 339 at 7-8, Hrg. Tr. 29: 5-11, 13-14, the Magistrate ordered Ms. Mey to respond without any finding of relevance or proportionality.

Lumen's hyper-aggressive and disparaging litigation tactics lay bare its motivation: to weaponize discovery and go after Ms. Mey, rather than defend its complicity in the making of obviously spoofed and unlawful robocalls. Plaintiff has explained how these requests were vastly

overbroad and irrelevant request during meets-and-confers, in her brief (ECF 339 at 7-8), and at oral argument (Hrg. Tr. 17:9- 18:4).

Ms. Mey respectfully asks this Court to draw reasonable discovery limits and limit Plaintiff's response to Interrogatory No. 2 and RFP 18 to actions more closely tethered to the claims, pertaining not to text messages, faxes, emails or other communications about unwanted calls broadly, but actions relating to unwanted spoofed phone calls made by telephone providers like Lumen, who was not the final provider connecting the call, but was so involved in the placing of the spoof call to have been deemed to have initiated it.

### C. The Magistrate did not consider Ms. Mey's legitimate privacy concerns in having her personal contacts exposed and to the Defendants — Lumen Interrogatory 3, RFP 13 and 14.

Courts recognize that individuals have a personal interest in the privacy of their cell phone records. *Scott v. Complete Logistical Servs., LLC*, No. CV 19-11672, 2021 WL 2402161, at *2–3 (E.D. La. June 11, 2021) (citing cases). Phone records should not be produced where they are "not important to resolving that issue in the case as the defendant could obtain evidence of the same without the cell phone records." *Id*. at *2–3; *see Benge v. Highgate Holdings*, No. 3:09-CV-1404-B (BK), 2011 WL 13290463, at *3 (N.D. Tex. Apr. 5, 2011) (ordering the production of call records only between plaintiff and the relevant parties because any more was "a fishing expedition").

The Magistrate abused discretion in ordering the production of unredacted phone records. Providing telephone numbers of Ms. Mey's friends, family, and others unrelated to the calls at issue carte blanche is an invasion of Ms. Mey's and her family's privacy – ironic, considering the TCPA is designed to protect consumer privacy against nuisance and invasive calls. Ms. Mey also has a legitimate fear that her unredacted phone records containing her personal contacts will be

used to harass, annoy, and embarrass her and people she knows, given Lumen's especially aggressive litigation tactics. Although she made these arguments in her brief, ECF 339 at 4, and at oral argument, Hrg. Tr. 16:24-17:8, the Magistrate ordered that she produce unredacted phone bills in the past ten years. ECF 387 at 10, 12.

Ms. Mey has provided her phone bills for all seven months that she received the calls alleged in the Amended Complaint. Phone bills in months and years that she is not alleging to have received a spoof call from Lumen is irrelevant. Lumen Defendants have no need for Ms. Mey's phone bills, much less unredacted call records, across the entire class period where there is no allegation that she received calls from the Lumen Defendants or their customers during those other times.[3]

Lumen already has more information about Ms. Mey's calls than just the seven months of phone bills. The AT&T exhibit that the Defendants keep referencing has already been produced in redacted form.[4] The exhibit, which is Ms. Mey's call detail records ("CDRs") from May 2017 through March 2019, is a much broader time frame than the seven phone bills that they demand be unredacted. Plaintiff also applied fewer redactions to these CDRs, showing not just the calls explicitly mentioned in the Amended Complaint, but all calls from invalid numbers, either to or

---

[3] Defendants claim that Ms. Mey did not disclose a call from an unassignable number that she received in January 2021. ECF 422 at 2. The calls made to Ms. Mey in this case were in 2018 and 2019. Ms. Mey was not obligated to mention a call from an unassignable number from a different year by a different Defendant.

[4] This less redacted version of Ms. Mey's phone call records was Plaintiff's good faith efforts to provide Defendants with potentially responsive information. It was offered as a compromise but Lumen was unresponsive. Despite this, Plaintiff produced the more extensive records any way.

from Ms. Mey. Despite having these records in hand April 2022, Lumen continues to point to the redacted phone bills as justification for more call records without acknowledging that they already have Ms. Mey's *more detailed* CDRs. ECF 422 at 8. No additional relevant information would be gained from further removal of redactions of the phone bills or CDRs, but would only open the door for the Defendants to harass Ms. Mey.

The Magistrate stated the Protective Order as an adequate measure to address Ms. Mey's privacy concerns. The Magistrate has incorrectly placed faith on the Protective Order as the means to address Plaintiff's privacy concerns. The very people Plaintiff seeks to keep away from her phone bills and call detail records, for fear of harassment and abuse, are the Defendants.[5] Will the defendants compile privacy-invading lists of calls placed by Ms. Mey, her sons, her husband, and her late mother? Nothing in the Protective Order would prohibit Lumen from using the 12 years of call records as they see fit.

The Orders failed to adequately account for Plaintiff's privacy concerns was clear error.

### D. The Magistrate's Orders for settlement agreements and other documents evidencing the money Ms. Mey has received is overly broad and clearly erroneous— Inteliquent's RFP 20

Inteliquent's RFP 20 seeks "All Documents sufficient to identify the total amount of recovery by You or your family members… in TCPA cases throughout your lifetime, litigated or otherwise," including "Personal records/notes, settlement agreements, and bank statements[.]"

---

[5] Lumen concocts a narrative that Plaintiff, not it, would engage in unethical behavior by citing to Plaintiff's counsel's interactions with its own expert during a meeting of the parties' experts, a meeting that was suggested by Plaintiff and adopted by the Court. Lumen claims that Plaintiff and its expert spoke during breaks and sees this as an "admitted" "violation of this Court's orders." The purpose of the meeting was to cut through the roadblocks that Lumen's lawyers were putting up to avoid handing over their CDRs. There was nothing improper about Plaintiff's expert communicating with counsel during the break in that meeting.

ECF 391 at 5. The Magistrate's order of limitless production was clear error. Even now with a ruling in its favor, Inteliquent is not demanding bank statements or personal records/notes to show Plaintiff's recovery. In its opposition, Inteliquent does not ask for more information related to Plaintiff's settled suits, but wants to know how much Ms. Mey has earned pre-suit. ECF 431 at 8. Plaintiff has offered to estimate pre-suit settlements, but Inteliquent has not responded to this offer. This would be an adequate resolution to this dispute.

Inteliquent and Lumen do insist, however, on Plaintiff's production of settlement agreements. ECF 422 at 4. Ms. Mey's production of a settlement agreement would violate her promises to keep the terms of the agreement confidential. It would also implicate the rights and privileges of non-parties, who are likely competitors of the Defendants, and who would likely get involved in maintaining the confidentiality of their documents. Neither Lumen nor the Orders provide any reason to foment this battle.

### E. The Defendants' *ad hominem* attacks are gratuitous and baseless.

Plaintiff has been actively engaged in meet and conferrals with all Defendants since January 2022 in good faith. Both Inteliquent and Bandwidth engaged in more good faith meet and conferrals with Plaintiff before moving to compel and these negotiations continued more regularly and consistently through the discovery process. However, for the Lumen Defendants, with the exception of establishing an ESI protocol, no discernable progress has been made to resolve the disputes raised in their motion, despite Plaintiff's attempts to do so.

Defendants also repeatedly argue that Plaintiff gave contrary answers, took contrary positions, picked and chose which documents to produce, and boldly stated that "Lumen has no reason to believe that there are not more (and more serious) contradictions that impact this case." ECF 422 at 1-2. Lumen posits that Plaintiff "strategically delayed producing" a letter from

AT&T stating that AT&T's recordkeeping lasted only 6 months, while discussing with Lumen their own retention policy. ECF 422 at 3 n.1. Why would Plaintiff "strategically delay" producing this letter? AT&T's recordkeeping policies do not affect Lumen's retention policies. Moreover, Lumen knew about AT&T's retention policy from an earlier production, which included a letter in reply to the AT&T letter where Plaintiff reiterated AT&T's six months retention policy. Ex. 2("While I understand that … AT&T does not keep switch records beyond six months. . ."). Further, AT&T never substantively responded to the July 2020 subpoena and Plaintiff never pursued this subpoena further. It is therefore of no consequence. Nevertheless, Plaintiff produced the subpoena in a good faith effort to ensure absolutely nothing was withheld. Yet Lumen attacks the credibility and motivations of both Ms. Mey and her counsel, for reasons that have nothing to do with the issues at hand.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court apply the appropriate limitations to the Defendants' discovery requests and reverse the Magistrate's ruling on: prior TCPA litigation materials, information related to Ms. Mey's efforts to not receive unwanted calls, Ms. Mey's telephone records, and documents evidencing money Ms. Mey received from settlements.

The Defendants already have abundant information on Ms. Mey's TCPA activities. They have almost two years of call records that show facially invalid calls. They have Ms. Mey's estimate of the amount she has received from TCPA settlements, and can get an estimate for pre-suit litigations from Ms. Mey. Plaintiff respectfully asks the Court to find that the significant burden of producing more materials to respond to these requests far outweighs its value to this lawsuit, and that the Magistrate abused its discretion in ordering their production.

Date:  July 1, 2022

PLAINTIFF
By Counsel

 /s/ *John W. Barrett*
 John W. Barrett (WV Bar No. 7289)
Jonathan R. Marshall (WV Bar No. 10580)
Benjamin J. Hogan (WV Bar No. 12997)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: 304-345-6555
Facsimile:  304-342-1110
JBarrett@baileyglasser.com
JMarshall@baileyglasser.com
BHogan@baileyglasser.com

William Howard (admitted *pro hac vice*)
THE CONSUMER PROTECTION FIRM
401 East Jackson Street, Suite 2340
SunTrust Financial Center
Tampa, FL 33602
Telephone: 813-500-1500
Facsimile: 813-435-2369
Billy@TheConsumerProtectionFirm.com

Yvette Golan (admitted *pro hac vice*)
THE GOLAN FIRM
529 14th Street, NW, Suite 914
Washington, DC 20045
Telephone: 866-298-4150 ext. 101
Facsimile: 928-441-8250
YGolan@tgfirm.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, John W. Barrett, hereby certify that on July 1, 2022, I caused to be filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF HER LIMITED OBJECTIONS TO THE MAGISTRATE'S ORDERS GRANTING THE MOTIONS TO COMPEL OF DEFENDANTS LUMEN AND INTELIQUENT** with the Clerk of Court using the CM/ECF system, which caused a true and accurate copy to be served upon all attorneys of record.

/s/ John W. Barrett
John W. Barrett (WV Bar No. 7289)